IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL SESSION, 1998

FILED

June 10, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9708-CR-00349 |
| | ) | |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. J. RANDALL WYATT, JUDGE |
| JACK KEVIN SUTTON, | ) | |
| | ) | |
| Appellant. | ) | (AGGRAVATED BURGLARY) |

FOR THE APPELLANT:

KARL DEAN
District Public Defender

JEFFREY A. DeVASHER
Assistant Public Defender
(On Appeal)

DAVID BAKER
Senior Assistant Public Defender
1202 Stahlman Building
Nashville, TN 37201
(At Trial)

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

LISA A. NAYLOR
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

VICTOR S. JOHNSON, III
District Attorney General

KATRIN MILLER
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Jack Kevin Sutton, appeals as of right the sentences imposed by the Davidson County Criminal Court. Defendant pled guilty to two counts of simple robbery, one count of aggravated burglary, one count of assault, and one count of theft of property. The trial court sentenced Defendant as a Range I Standard Offender to three consecutive five-year sentences for the robbery and burglary convictions, and two eleven month and 29-day sentences for the assault and theft convictions. The latter two sentences were ordered to run concurrently to the others. In this appeal, Defendant argues that the sentences imposed were excessive and that consecutive sentences were not proper. Although we disagree with the trial court's application of two enhancement factors, we affirm the judgment of the trial court.

At the sentencing hearing, sixty-two-year-old Leland Stalcup testified that on March 1, 1996, he was coming out of a tobacco shop on Gallatin Road with a carton of cigarettes in his hand, when Defendant approached and asked him if he would like to purchase more cigarettes at $5.00 a carton. Mr. Stalcup agreed and then allowed Defendant into his car. Defendant told Stalcup to give him the money for the cigarettes and that he would purchase them for Stalcup at a grocery store where his father allegedly worked. Mr. Stalcup gave Defendant $35 with which to purchase the cigarettes. However Defendant began "mumbling and looking down at the place and back up again" so Mr. Stalcup asked Defendant for his money back and told him "we'll just forget the whole thing here." According to Mr. Stalcup, Defendant then grabbed the money from him. Stalcup attempted to catch Defendant at which point they began to scuffle. Defendant pushed Stalcup to the ground on the

gravel and Mr. Stalcup skinned his knee. Defendant pled guilty to assault and theft pertaining to Mr. Stalcup (Counts Four and Five).

Mrs. Clara Sutton, of no relation to Defendant, testified that on March 1, 1996, Defendant began hollering outside her house at 1802 Meridian Street, to let him come in. Mrs. Sutton, who is 80-years-old, had just had open heart surgery two weeks before this incident. Mrs. Sutton testified that she recognized Defendant's voice as being the nephew of one of her neighbors. She told Defendant that she does not allow anyone into her home because she lives by herself. Defendant told her that a man was bleeding to death in the street and he needed to use her telephone to call for help. Mrs. Sutton told him to go use his aunt's telephone, but he told her that his aunt was not at home. Sutton then told him to use another neighbor's phone because she was sure that that person was at home. Defendant told Mrs. Sutton that her neighbors were in fact not at home. Believing her storm door to be latched, she then went to open the glass door to talk further with Defendant. When she began to open the glass door, Defendant pushed his way inside. She testified that he came in "wild as a deer."

At this point he told her he needed a glass of water. She told him to get it himself because she had just had surgery and was not able to freely move about. Mrs. Sutton testified that he then began talking about one of her daughters who had some emotional problems. He then informed her that he needed money to which she replied that all of her money was in the bank. He told her that all of her neighbors had told him that she kept money in her dresser drawers. She then offered to write him a check if he would just leave her home. He refused and began going through all her things in search of money. She then threatened to call the

-3-

police to which he said, "[Y]ou'd better not call the police, I'll stomp you." Mrs. Sutton then began moving toward the front door and started screaming. At this point, Defendant grabbed Mrs. Sutton and threw her to the floor. She again told Defendant to leave or she would call the police. Defendant said "when you call the police, I'm going to stomp you and kill you."

Defendant continued to search the house for money and he eventually found a box that contained jewelry belonging to Mrs. Sutton's deceased husband. He took the box and ran out of the house. A few moments later, Mrs. Sutton's daughter and granddaughter arrived and they notified the police. Mrs. Sutton testified that she was still being treated by a physician at the time of the sentencing hearing for a knee injury she suffered when Defendant threw her to the floor on the day of the burglary. Defendant pled guilty to aggravated burglary and robbery pertaining to these acts on Mrs. Sutton (Counts Two and Three).

Chester Earl Collins, who is 83-years-old, testified that on March 5, 1996, Defendant forced his way onto his property by placing his foot inside the property gate so that it could not be closed. Mr. Collins said that Defendant threw him on his back and that he landed on a lawnmower. Defendant demanded money from Collins to which he told Defendant that he did not have any money. Defendant removed a set of keys and a change purse which contained another key from Collins' pants. Defendant further searched through Mr. Collins' hip pocket and tore his pants in the process of searching for money. Defendant then left and a neighbor called the police. Mr. Collins testified that his back continues to hurt him as a result of Defendant pushing him down on top of the lawnmower. Defendant pled guilty to robbery of Mr. Collins (Count One).

-4-

Mary Ellen Hea, a licensed clinical social worker for the Public Defender's Office, was called by the defense to testify at the sentencing hearing. She said that she had assessed the Defendant and had concluded that Defendant was born prematurely and tested at the borderline intellectual functioning range. Ms. Hea testified that Defendant had been hospitalized for mental illness on five prior occasions. She also said that Defendant may suffer from visual hallucinations and that his illness requires medication. On cross-examination she testified that she was aware of Defendant's daily crack cocaine addiction. Ms. Hea also said that she did believe Defendant to be taking his medication when he committed the present offenses.

The 35-year-old Defendant testified that he is remorseful for his crimes and that he was not taking his medications at the time he committed the crimes. Defendant could recall his prior conviction for prostitution, but he could not remember his prior convictions for fraud, attempt to commit a felony, or forgery. He also said that although he had been convicted of DUI, he did not commit that crime. Defendant testified that he had been using crack cocaine for two to three years. He denied that he committed the present crimes in an attempt to get money for drugs. In fact, he said that he asked Ms. Sutton for money to ride the bus and that he asked Mr. Collins if he could work for him for money. He further said that he did not intend to commit these crimes.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn.

Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this Court must consider the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the arguments of counsel relative to sentencing alternatives, the nature of the offense, and the defendant's potential for rehabilitation. Tenn. Code Ann. § 40-35-210; State v. Parker, 932 S.W.2d 945, 955-56 (Tenn. Crim App. 1996).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Upon review of the record, we find that the trial court considered the proper sentencing principles and stated its reasons and findings on the record. Therefore, review by this court is de novo with a presumption of correctness.

## I. LENGTH OF SENTENCES

The Defendant argues that the trial court erred by imposing the sentences of five (5) years on each of his two robbery convictions (Counts One and Three), and

on his aggravated burglary conviction (Count Two).  Defendant does not challenge the sentences for the misdemeanor convictions for assault and theft (Counts Four and Five).  The trial court found that four (4) enhancement factors were applicable to the three felony convictions:

> (A) The Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range.  Tenn. Code Ann. § 40-35-114(1).
>
> (B) A victim of the offense was particularly vulnerable because of age or physical or mental disability.  Tenn. Code Ann. § 40-35-114(4).
>
> (C) The Defendant treated or allowed the victims to be treated with exceptional cruelty.  Tenn. Code Ann. § 40-35-114(5).
>
> (D) The Defendant had no hesitation about committing a crime when the risk to human life was high.  Tenn. Code Ann. § 40-35-114(10).
>
> (E) The crimes were committed under circumstances in which the potential for bodily injury to a victim was great.  Tenn. Code Ann. § 40-35-114(16).

The trial court found as mitigating factors the Defendant's history of mental problems, and the fact that Defendant was raised in a dysfunctional family.  Tenn. Code Ann. §§ 40-35-113(8) and (13).

First, the trial court concluded that Defendant had a prior criminal history.  Tenn. Code Ann. § 40-35-114(1).  Defendant does not contest the application of this factor, but we will nevertheless review its significance.  Although Defendant was unable to recall several of his convictions, the presentence report indicates that Defendant had six prior misdemeanor convictions, including solicitation of an undercover officer for prostitution, fraud, DUI, attempt to commit the felony of larceny, attempt to commit the felony of forgery, and making false reports.  In addition, Defendant admitted using crack cocaine for the past two to three years.

Based on these facts, the application of this enhancement factor is justified in enhancing all three felony convictions (Counts One, Two and Three).

Defendant does challenge the trial court's finding that one of the victims, Mr. Chester Collins, was particularly vulnerable because of his age and physical limitations. Tenn. Code Ann. § 40-35-114(4). Defendant only challenges this factor as applied to Chester Collins (Count One). Upon careful review of the record, we find that this enhancement factor does not apply as to Mr. Collins.

Our supreme court recently addressed the applicability of this factor in State v. Poole, 945 S.W.2d 93, 96-98 (Tenn. 1997). In Poole, the supreme court stated that the trial court must consider all of the facts and circumstances of the offense in determining whether this factor is appropriate for the offense. The application of this factor is a factual issue resolved on a case-by-case basis. Id. at 96 (citation omitted). The State bears the burden of proving the victim's limitations which made the victim particularly vulnerable. Id. In determining whether the State has met its burden, the trial court should consider whether evidence pertaining to the victim's age or physical and mental attributes demonstrated an inability to resist the crime, summon help, or testify at a later date. Id. There must be evidence in the record in addition to the victim's age. Id. at 97. The court must also determine if the factor is appropriate for the offense by considering the nature of the offense and the manner in which it was committed. Id.

There is no question that an 80-year-old man might be particularly vulnerable to the type of offense committed by Defendant. However, "[a] person's age alone may have little or no bearing on size, strength or vitality." Id. at 98. Since the State

produced no evidence of physical or mental limitations at the time of the offense, it cannot be presumed that the victim was particularly vulnerable based solely on his age. Therefore, there is not sufficient evidence to support the application of this factor to Defendant's conviction for robbery of Mr. Collins (Count One). This factor does however, apply to the two convictions pertaining to Mrs. Sutton (Counts Two and Three), since her delicate physical condition made her particularly vulnerable.

The trial court also found that Defendant treated or allowed the victims to be treated with exceptional cruelty. Tenn. Code Ann. § 40-35-114(5). The State correctly agrees with Defendant that the circumstances in this case do not support the finding of this enhancement factor as to any of the felony convictions.

Defendant next contends that the trial court erred in finding that he had no hesitation about committing a crime when the risk to human life was high in regards to his convictions for robbery of Mr. Collins and Mrs. Sutton (Counts One and Three). See Tenn. Code Ann. § 40-35-114(10). Our supreme court recently addressed this enhancement factor, as applied to the crime of robbery, in State v. Mario A. Lavender and Eric L. Hobbs, No. 01-S01-9704-CR-00088, Davidson County (Tenn., Nashville, Apr. 27, 1998) (for publication). In that opinion, the supreme court stated that enhancement factor (10) is not an essential element of the offense of robbery, and that it may be used "when imposing a sentence for robbery so long as the facts which establish the elements of the offense are not also relied upon to establish the enhancement factors. This determination is dependent upon the particular facts of each case." Id. at 14. The court also pointed out that "[i]n determining whether a particular enhancement factor may be applied in a specific

case, the trial court must consider the elements of the offense and the evidence adduced at the trial and sentencing hearing." Id. at 9.

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A person commits "theft of property" if, "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 .

In this case, the proof shows that Defendant forced his way onto Mr. Collins property, pushed Mr. Collins to the ground, and having placed the victim in fear, Defendant then searched through his pockets for money. Defendant took control of the victim's property and left the premises with it, without Mr. Collins effective consent. These facts support the elements of the offense of robbery.

However, in this particular case, the State offered no additional proof as to how the risk to Mr. Collins life was particularly high, other than his age. While we find this crime to be utterly despicable, we cannot say that the evidence shows that the risk to Mr. Collins' life was high. The trial court erred in applying this enhancement factor as to Mr. Collins (Count One).

The Defendant forced his way into Mrs. Sutton's home, pushed her to the ground, and while she was placed in fear, Defendant searched her house for anything that might be of value. Defendant then took control of the property (her deceased husband's belongings) and left the premises with them, without Mrs. Sutton's effective consent. Again, the elements of robbery are met. However, in regards to Mrs. Sutton, we find that the evidence supports the trial court's application

of enhancement factor (10), "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(10). Mrs. Sutton was recovering from open heart surgery and the chance that she could have died from Defendant's actions was certainly high. The trial court correctly applied this factor as to Mrs. Sutton (Count Three). Defendant does not contest the application of enhancement factor (10) to the aggravated burglary conviction (Count Two), but we note for the record that we agree with the trial court's application of that factor to the aggravated burglary conviction.

Next, the trial court applied enhancement factor (16), "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great" to all three felony convictions. See § 40-35-114(16). Defendant contends that this enhancement factor was improperly applied to his three felony convictions because it is an essential element of the offenses. As to the robbery convictions, (Counts One and Three), the supreme court held in State v. Lavender and Hobbs that enhancement factor (16) is also not an essential element of the offense of robbery. No. 01-S01-9704-CR-00088, slip op. at 9. Again, we must determine its applicability on a case-by-case basis. Id. In regards to this factor, this Court finds that the trial court properly applied this factor as to the two robbery convictions. As discussed above, all of the elements of robbery were clearly met. Furthermore, the proof at the sentencing hearing revealed that Mr. Collins was eighty years old and Mrs. Sutton was eighty-three years old. Defendant pushed both victims to the ground in an attempt to rob them, so certainly it can be said that the risk of bodily injury to both of these elderly victims was great.

As to the aggravated burglary conviction, this Court has held that enhancement factor (16) should not be applied to an aggravated burglary conviction absent extraordinary circumstances. State v. Smith, 891 S.W.2d 922, 930 (Tenn. Crim. App., Nashville, July 21, 1994), perm. to appeal denied (Tenn. 1994). However, the circumstances surrounding the aggravated burglary of Mrs. Sutton's home does support the application of this enhancement factor. Mrs. Sutton was an eighty-three year old woman recuperating in her home from open heart surgery. Defendant forced his way into her home, threw Mrs. Sutton to the ground, ransacked her home in search of money or anything else of value, and threatened to kill her if she tried to call for help. The circumstances surrounding this horrifying event certainly support the application of this enhancement factor to the aggravated burglary conviction. This Court finds that the trial court properly applied enhancement factor (16) to all three felony convictions (Counts One, Two and Three).

In summary, the trial court properly applied enhancement factor (1) and (16) to all three felony convictions (Counts One, Two and Three). We find that enhancement factor (4) and (10) should only be applied to the two offenses against Mrs. Sutton (Counts Two and Three). We further find that enhancement factor (5) does not apply to any of the felony convictions. We agree with the trial court's application of the mitigating factors that Defendant has a history of mental problems and that Defendant comes from a dysfunctional background to all three felony convictions. See Tenn. Code Ann. § 40-35-113(8) and (13).

The trial court sentenced Defendant as a Range I Standard Offender for the three Class C felonies. Tenn. Code Ann. §§ 39-13-401(b); 39-14-403(b). The

sentencing range for a Range I Standard Offender convicted of a Class C felony is not less than three years nor more than six years. Tenn. Code Ann. § 40-35-112(a)(3). The presumptive sentence for a Class C felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). Should there be enhancement and mitigating factors, the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). The trial court in the case sub judice, imposed three five-year sentences for the Class C felony convictions. As to Count One, we find that two enhancement factors and two mitigating factors apply. As to Count Two, we find that four enhancement factors and two mitigating factors apply. As to Count Three, we find that four enhancement factors and two mitigating factors apply. The mitigating factors in this case do not weigh heavily against the enhancement factors. The great weight attributable to the applicable enhancement factors more than justifies the five-year sentences imposed as to all three felony convictions.

## II. Consecutive Sentences

The trial court ordered consecutive sentencing after making a finding that Defendant is a dangerous offender whose behavior indicated little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(4). We agree. The Defendant, without provocation, pushed two elderly people to the ground in an attempt to rob them. Certainly it can be said that Defendant's behavior demonstrated a contemptible lack

of concern for human life and an absence of basic human decency. Our <u>de novo</u> review further indicates that consecutive sentencing is necessary to protect the public from further criminal conduct by Defendant and that the terms imposed are reasonably related to the severity of the offenses. <u>State v. Wilkerson</u>, 905 S.W.2d 933, 938-39 (Tenn. 1995). Although the trial court did not specifically make the additional findings required by <u>Wilkerson</u>, we find that these factors are present in our <u>de novo</u> review. <u>See</u> <u>State v. Adams</u>, 859 S.W.2d 359, 363 (Tenn. Crim. App. 1993), <u>perm. to appeal denied</u> (Tenn. 1993). Consecutive sentencing is appropriate in this case.

Based on all the foregoing, the judgment of the trial court is accordingly affirmed.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
GARY R. WADE, Presiding Judge


_____
L. T. LAFFERTY, Special Judge