## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
## APRIL SESSION, 1999

**FILED**

May 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | No. 02C01-9806-CR-00169 |
| Appellee | ) | |
| | ) | SHELBY COUNTY |
| vs. | ) | |
| | ) | Hon. Joseph B. Brown, Jr., Judge |
| **RICKEY CRAWFORD,** | ) | |
| | ) | **(Theft of Property over $1000;** |
| Appellant | ) | **criminal attempt to commit first** |
| | ) | **degree murder)** |

For the Appellant:

**AC Wharton**
Shelby County Public Defender

**Tony N. Brayton**
Asst. Public Defender
201 Poplar, Suite 2-01
Memphis, TN 38103

(ON APPEAL)

**Tarik Sugarman**
Criminal Justice Center
Second Floor
201 Poplar Avenue
Memphis, TN 38103

(AT TRIAL)

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**J. Ross Dyer**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**William L. Gibbons**
District Attorney General

**Thomas Hoover**
Asst. District Attorney General
Criminal Justice Complex
Suite 301, 201 Poplar Avenue
Memphis, TN 38103

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Rickey Crawford, was found guilty by a Shelby County jury of theft of property over $1,000 and of criminal attempt to commit first degree murder. The trial court subsequently imposed consecutive TDOC sentences of four years for the theft conviction and twenty-five years for the attempted murder conviction, resulting in an effective sentence of twenty-nine years. In this appeal as of right, the appellant raises two issues for our review:

> I. The sufficiency of the evidence necessary to affirm his conviction for criminal attempt to commit first degree murder; and
>
> II. The propriety of the trial court's imposition of consecutive sentences.

Finding no error of law requiring reversal, we affirm the judgments of conviction and sentences imposed by the trial court.

## Background

In early 1996, the appellant and Angela Boxley, the victim, were involved in a romantic relationship. The relationship was such that, in February, the appellant moved into Boxley's North Memphis apartment which she shared with her minor children. During this time, the appellant and Boxley purchased a 1980 Chevrolet Caprice. Although the appellant gave Boxley $800 for the down payment, the vehicle was in Boxley's name and she was responsible for making all of the installment payments. By the end of March, Boxley ended the relationship, due primarily to the appellant's ongoing physical abuse of her. After the parties separated, Boxley traded the 1980 Chevy Caprice for a white 1989 Toyota Tercel.

The appellant moved out of the North Memphis residence, and, soon thereafter, began to stalk Boxley. His actions included harassing Boxley at her

2

place of employment and making verbal threats that he was going to kill her. On June 9, 1996, the appellant went to Boxley's apartment and knocked on the door. When Boxley refused to let him enter, he went around to her bedroom window, knocked out the glass panes, and threatened to kill Boxley. The appellant was prevented from gaining access to the interior of the apartment at this time because Boxley had installed iron bars on her windows. He continued beating on the front door and Boxley was ultimately forced to contact the police. The appellant's pursuit of his victim was only temporarily thwarted.

The next morning, as Boxley was walking with her children to her car, the appellant came running out of the bushes. The appellant threatened, "Bitch, I told you I was going to kill you." Boxley attempted to talk with the appellant, but without success. At this point, the appellant brandished a pistol. A struggle then ensued between the two over control of the weapon. Boxley released her hold on the weapon and attempted to back away. The appellant looked at Boxley and shook his head. He then shot Boxley hitting her in the shoulder. The appellant shot Boxley again, this time, hitting her in the arm and causing her to fall to the ground. He then walked over to where Boxley lay injured, stood over her, and continued to fire the weapon. He then demanded that Boxley relinquish the keys to the Toyota, which she did.

The appellant then left the scene in Boxley's Toyota Tercel. Late that evening, the appellant was apprehended by law enforcement authorities in Marks, Mississippi, a town approximately sixty miles south of Memphis. The arresting officer, Rickey Bridges, searched the vehicle and discovered a .38 caliber Smith and Wesson revolver with five spent rounds in the trunk of the car. The appellant advised Officer Bridges that he had shot his girlfriend in Memphis earlier that morning.

3

At his subsequent trial, the appellant provided testimony to the effect that he believed that he was the rightful owner of the Toyota Tercel because he had paid for the Chevrolet Caprice. Additionally, although he did not deny his involvement in the shooting, he explained that he did not intend to kill Boxley, that he had only carried the weapon for his own protection, and that he had only shot her because he "lost control."

## I. Sufficiency of the Evidence

In his first assignment of error, the appellant avers that the evidence was insufficient for a rational trier of fact to find him guilty of criminal attempt to commit first degree murder.[1] Specifically, the appellant maintains that the State failed to show that the attempted murder was premeditated and not the result of passion.

When reviewing a trial court's judgment, the appellate court will not disturb a verdict of guilt unless the facts of the record and inferences which may be drawn from it are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn.1982). In other words, this court will not reevaluate or reweigh the evidence brought out at trial. It is presumed that the judge or jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn.1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978); State v. Grace, 493 S.W.2d 474, 476 (Tenn.1973). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a

---

[1]The appellant does not challenge the sufficiency of the evidence supporting his conviction for theft of property over $1000.

4

presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. Grace, 493 S.W.2d at 476.

Once a homicide is established it is presumed to be second degree murder. State v. Brown, 836 S.W.2d 530, 543 (Tenn.1992). The State, then, has the burden of proving the element of premeditation to elevate the offense to first degree murder. Id. Premeditation necessitates "the exercise of reflection and judgment," requiring a "previously formed design or intent to kill." State v. West, 844 S.W.2d 144, 147 (Tenn.1992).

The element of premeditation is a question for the jury and may be inferred from the circumstances surrounding the killing. State v. Gentry, 881 S.W.2d 1, 3 (Tenn.Crim.App.1993), perm. to appeal denied, (Tenn.1994). Because the trier of fact cannot speculate as to what was in the killer's mind, the existence of facts of premeditation must be determined from the appellant's conduct in light of the surrounding circumstances. State v. Wright, No. 01C01-9503-CC-00093 (Tenn.Crim.App. at Nashville, Jan. 5, 1996). Although there is no strict standard governing what constitutes proof of premeditation, several relevant circumstances are helpful, including: the use of a deadly weapon upon an unarmed victim; the fact that the killing was particularly cruel; declarations by the defendant of his intent to kill; and the making of preparations before the killing for the purpose of concealing the crime. State v. Bland, 958 S.W.2d 651, 660 (Tenn.1997), cert. denied, -- U.S. -- 118 S.Ct. 1536 (1998) (citing Brown, 836 S.W.2d at 541-542). Additional factors from which a jury may infer premeditation include planning activities by the appellant prior to the killing, the appellant's prior relationship with the victim, and the nature of the killing. Gentry, 881 S.W.2d at 4-5 (citation omitted).

Reviewing the evidence in the light most favorable to the State, the appellant, on the morning of the murder, hid outside the victim's apartment concealing himself

5

behind the existing shrubbery, lying in wait for his victim. When she finally emerged from her apartment, the appellant ambushed the unarmed victim in the presence of her young children and announced his intent to kill her. Boxley attempted to escape; however, the appellant followed, firing five shots, two of which struck the victim and three which were fired after the victim had fallen to the ground. The appellant's conduct on this date followed previous threats to the victim that he was going to kill her. Based upon this proof, we conclude that there is overwhelming evidence concerning the appellant's planning activity, his motive, his previous threats to the victim, and the circumstances of the shooting to support the jury's finding of premeditation. This issue is without merit.

## II. Consecutive Sentences

At the sentencing hearing, the trial court imposed a sentence of four years for the appellant's conviction of theft of property and imposed a sentence of twenty-five years for the appellant's conviction of attempted first degree murder. The appellant does not contest the length of these sentences on appeal. Rather, in his final assignment of error, the appellant contends that the trial court erred in ordering that these sentences be served consecutively, resulting in an effective sentence of twenty-nine years.

Consecutive sentences may be imposed when a defendant is convicted of more than one criminal offense. Tenn. Code Ann. § 40-35-115 (1997). However, prior to the imposition of consecutive sentences, the trial court must determine that one or more of a statutorily enumerated list of criteria exists. At the sentencing hearing, the trial court based its imposition of consecutive sentences upon finding (1) that the appellant is "an offender whose record of criminal activity is extensive" and (2) that the appellant is "a dangerous offender whose behavior indicates little or

6

no regard to human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(2) and (4).

### i. Dangerous Offender

The appellant contends that the trial court's finding that he is a "dangerous offender" is erroneous because theft of property is not an inherently dangerous crime. In Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976), our supreme court held that "[a] defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." (emphasis added). See also Tenn. Code Ann. § 40-35-115(b)(4); State v. Wilkerson, 905 S.W.2d 933, 937 (Tenn.1995). No prerequisite exists in Tenn. Code Ann. § 40-35-115(b)(4), Gray v. State, or State v. Wilkerson that the offense, by statutory definition alone, be a dangerous offense. In determining the inherently dangerous nature of the instant offenses, the focus is not whether the crimes were dangerous crimes, but whether there exists aggravating circumstances in the commission of the instant offenses. See Gray, 538 S.W.2d at 393.

In the present case, the appellant armed himself with a weapon and strategically planned the ambush on his ex-girlfriend and the theft of her vehicle. The fact that the appellant fired multiple shots at Ms. Boxley as she lay injured upon the ground and then demanded the keys to her automobile showed little regard for human life. Moreover, despite the fact that Ms. Boxley's minor children were with her at the time of the incident, the appellant continued firing the weapon with callous disregard for the safety of the children. This proof clearly establishes that the appellant had no hesitation about committing a crime when the risk to human life was high and that the appellant has little or no regard for human life. Accordingly, the trial court's classification of the appellant as a dangerous offender is warranted.

7

This Court's review of the sentences imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1997). The evidence clearly supports the trial judge's rationale for consecutive sentencing. See *supra*. Furthermore, the terms imposed by the trial judge are reasonably related to the severity of the offenses and are necessary to protect the public from further criminal acts by the offender. Wilkerson, 905 S.W.2d at 938. Although the trial court did not make the findings required by Wilkerson, we find that these factors are present under our power of *de novo* review. State v. Adams, 859 S.W.2d 359 (Tenn.Crim.App.1993). Consecutive sentencing is appropriate.

### ii. Extensive Record of Prior Criminal Activity

The record reflects that the appellant has a prior criminal record consisting of two convictions for aggravated assault, nine convictions for armed robbery, and one conviction for second degree burglary.[2] The appellant challenges his classification "as an offender whose record of criminal activity is extensive," Tenn. Code Ann. § 40-35-115(b)(2), arguing that the criteria for this classification is predicated not upon an offender's prior record, but the convictions for which consecutive sentencing is sought. The consecutive sentencing classification provisions of Tenn. Code Ann. § 40-35-115 are, in essence, a codification of the holdings in Gray v. State, 538 S.W.2d 391 (Tenn. 1976) and State v. Taylor, 739 S.W.2d 227 (Tenn. 1987). See Sentencing Commission Comments, Tenn. Code Ann. § 40-35-115. The first four criteria, which include section 115(b)(2), record of extensive criminal history, were taken directly from Gray. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-115.[3]

---

[2]The record indicates that at least nine of these prior convictions arose from the same incident.

[3]These criteria include: (1) the professional criminal; (2) the multiple offender; (3) the dangerous mentally abnormal offender and (4) the dangerous offender. Gray contained a fifth criterion, the persistent offender, which was not codified in section 115(b).

Gray did not contain a category captioned, "The defendant is an offender whose record of criminal activity is extensive." However, Gray did establish, for consecutive sentencing purposes, a "multiple offender category." The multiple offender definition in Gray tracks almost verbatim the statutory language of section 115(b)(2), "one whose record of criminal activity is extensive." (Emphasis added). Moreover, Gray provides that "[T]he prior record of the multiple offender may have been good, but the crimes for which he has been convicted indicate criminal activity so extensive and continuing for such a period of time as to warrant consecutive sentencing." Gray, 538 S.W.2d at 393 [citing MODEL PENAL CODE Section 7.03]. Section 7.03, MODEL PENAL CODE, recognizes three situations in which consecutive sentencing may apply to those classified as multiple offenders: (1) when the court is actually imposing sentences for more than one felony, (2) when it is imposing a sentence that will run concurrently with a felony sentence already imposed, and (3) when it is imposing a sentence for one felony but the defendant has asked that the sentence cover other felonies admitted in open court.

Thus, it is apparent from a reading of Gray and its origin, Section 7.03 of the MODEL PENAL CODE, that the "multiple offender" classification in Gray, which was codified in section 115(b)(2), was not intended by our legislature to encompass those offenders who were before the court for consecutive sentencing based upon their record of prior felony convictions. Indeed, our supreme court in Gray classified this offender within the "persistent offender" category. As noted in the Sentencing Commission Comments to § 40-35-115, the "persistent offender" classification was not codified because "[t]his additional category has been built into the sentencing structure which enhances the sentence ranges depending upon the types and severity of the prior felony convictions." Sentencing Commission Comments, Tenn. Code Ann. § 40-35-115. Thus, the appellant's classification as an offender whose

9

record of criminal activity is extensive, Tenn. Code Ann. 40-35-115(b)(2) was error.[4]

Notwithstanding this error, only one statutorily enumerated criteria in Tenn. Code Ann. § 40-35-115 is required to warrant the imposition of consecutive sentences. Because the appellant was properly classified as a "dangerous offender," consecutive sentences were proper.

---

[4]Two members of this panel would affirm consecutive sentencing pursuant to Tenn. Code Ann. § 40-35-115(b)(2) based upon the appellant's prior record of criminal activity, while acknowledging that other interpretations are tenable. Their affirmance relies, in large part, upon (1) this court's holdings in numerous cases over the past eight years that Tenn. Code Ann. § 40-35-115(b)(2) applies to "offenders who have an extensive history of criminal convictions, not limited to the offenses before the sentencing court" and (2) this interpretation logically fills the "gap" between the professional criminal and the multiple offender as defined in Gray.

Judges Tipton and Lafferty rely upon prior judicial decisions which support their position, however, other panels of this court have, on occasion, reached different results. See, e.g., State v. Blazer, No. 03C01-9405-CR-00185 (Tenn. Crim. App. at Knoxville, Feb. 3, 1995) (recognizing that past record was not contemplated in Gray to constitute an extensive record of criminal activity for consecutive sentencing pursuant to section 115(b)(2)); State v. Gruzella, No. 01C01-9401-CC-00002 (Tenn. Crim. App. at Nashville, Aug. 23, 1994)(prior record of the multiple offender good, but his crimes indicate extensive criminal activity warranting consecutive sentencing pursuant to section 115(b)(2)); State v. Miles, No. 01C01-9210-CC-00333 (Tenn. Crim. App. at Nashville, Sept. 16, 1993), perm. to appeal denied, (Tenn. Feb. 22, 1994) (holding that offender was both a multiple and persistent offender); State v. Bryant, No. 327 (Tenn. Crim. App. at Knoxville, Apr. 3, 1991) (consecutive sentences appropriate pursuant to section 115(b)(2) based upon offender's extensive record of criminal activity before the court with no prior criminal history). No prior opinion of this court indicates the benefit of full briefing and argument on this matter with the exception of the case sub judice and Blazer, No. 03C01-9405-CR-00185, which held that the past record of the defendant was not contemplated by the legislature in their enactment of Section -115(b)(2). See Hohn v. United States, -- U.S. --, 118 S.Ct. at 1968, 1981 (1998) (Scalia, J., dissenting). Moreover, notwithstanding the notable inconsistencies in the decisions of this court on this matter, abandonment of an established legal precedent is mandated where the decision in question has been proven manifestly erroneous. See Payne v. Tennessee, 501 U.S. 808, 828-830, 111 S.Ct. 2597, 2609-2611 (1991). Thus, where judicial decisions are unworkable, badly reasoned, or contradictory to the legislature's intent, we cannot feel constrained to follow such precedent. See Smith v. Allwright, 321 U.S. 649, 665, 64 S.Ct. 757, 765 (1944). Stare decisis is not an inexorable command; rather, it "is a principle of policy and not a mechanical formula of adherence to the latest decision." See Payne, 501 U.S. at 828, 111 S.Ct. at 2609.

Moreover, while it is true that the separate concurring's interpretations of extensive criminal activity may "fill the gap," it would appear that this "gap" was intended by our legislature in its express rejection of the "persistent offender" classification. While it is the province and duty of the judiciary to interpret the law, the legislative branch has the exclusive power to formulate the law. See Tennessee Valley Authority v. Hill, 437 U.S. 153, 194, 98 S.Ct. 2279, 2301-02 (1978).

_____
DAVID G. HAYES, Judge


CONCUR:



_____
JOSEPH M. TIPTON, Judge



_____
L. T. LAFFERTY, Senior Judge