FILED

08/09/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2021

**STATE OF TENNESSEE v. STEPHEN A. SIMPSON**

**Appeal from the Criminal Court for Loudon County**
**No. 2018-CR-63     Jeffery Hill Wicks, Judge**

_____

**No. E2020-01340-CCA-R3-CD**
_____

The Loudon County Grand Jury indicted Defendant, Stephen A. Simpson, with one count of driving under the influence ("DUI") and one count of simple possession of a Schedule II controlled substance. Following trial, a jury convicted Defendant of both counts. For the DUI count, the trial court sentenced Defendant to eleven months and twenty-nine days, suspended to forty-eight hours in confinement and the remainder to serve on supervised probation. For possession of a Schedule II controlled substance, the court sentenced Defendant to eleven months and twenty-nine days to be served on supervised probation. The trial court ran the sentences concurrently. On appeal, Defendant argues that the trial court erred in denying his motion to suppress evidence and that the evidence was insufficient to support his DUI conviction. Following a thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Walter Johnson, Lenoir City, Tennessee, for the appellant, Stephen A. Simpson.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Russell Johnson, District Attorney General; and Joe Caldwell and Alyson Kennedy, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

*Motion to Suppress*

Loudon County Sheriff's Department Deputy James Ketner testified that, in the early morning of February 27, 2016, he was "sitting stationary on Highway 11, Spring Street" and that "the [Defendant's] truck passed [him]." Deputy Ketner was facing perpendicular to the roadway. He "looked inside the windshield, looked inside the cab of the truck, and noticed the driver wasn't wearing a seat belt." Deputy Ketner then initiated a traffic stop around 2:40 a.m. Deputy Ketner agreed that, as a law enforcement officer, he had been trained in viewing seat belts, "whether it be in the day or nighttime." Deputy Ketner testified that he was able to see that Defendant was not wearing a seat belt because the headlights of his patrol car were on so that "when the vehicles pass [him,] [he] can look inside the truck or car to see how many people are in there and whether or not they're wearing a seat belt." He cited Defendant for not wearing a seat belt.

On cross-examination, Deputy Ketner stated that the only reason he stopped Defendant was because he saw that Defendant was not wearing a seat belt. Deputy Ketner said that Defendant was driving average speed, not particularly slow or particularly fast. He testified that he did not recall whether Defendant had the lights on in the cab of the truck. Deputy Ketner could not recall how long he was able to see into Defendant's vehicle.

The trial court denied the motion to suppress, finding that Deputy Ketner "saw the Defendant coming by without a seat belt on" which "would give the officer probable cause to stop the vehicle." The case proceeded to trial.

*Trial*

At trial, Detective Ketner[1] testified to his interactions with Defendant on February 27. He described where his patrol car was positioned and stated that he saw Defendant drive by him without a seat belt on. Detective Ketner agreed that he "specifically position[ed] [his] car in a manner to be able to see . . . into the cab" and that he did look for the "strap" of the seat belt. After noticing that Defendant was not wearing his seat belt, Detective Ketner activated his blue lights and pulled Defendant over. Detective Ketner stated that the weather that night was "cold and dark." Detective Ketner approached Defendant's vehicle at approximately 2:30 a.m. Defendant was in the driver's seat, and Mr. Timothy Crawley was in the front passenger's seat. Detective Ketner could "smell the

---

[1] Deputy Ketner was promoted after the suppression hearing to detective.

alcohol coming from inside the vehicle," and he noticed an "open container of beer in the cupholder." Detective Ketner recalled that he asked Defendant to exit the vehicle and described Defendant as "kind of lethargic." He explained that Defendant was "[j]ust slow to move, slow to answer questions." Detective Ketner agreed that this type of behavior is "consistent with somebody who is impaired."

After Defendant exited the vehicle, Detective Ketner took Defendant to his police car to talk to him. He smelled "the odor of alcohol" coming off of Defendant. Defendant stated that he had "one beer" and had been at a bar "down the road." Detective Ketner asked Defendant if he was on any type of medication. Defendant advised that he had a fentanyl patch on his shoulder and that he also had taken "Oxycodone or OxyContin." Detective Ketner explained that a fentanyl patch is a "patch just to put on [your] arm to relieve the pain. It's . . . prescription only." Detective Ketner agreed that "fentanyl patches cause an impairment." Detective Ketner testified that he "patted [Defendant] down on the outside" and found a metal container in one of Defendant's pockets which contained five Oxycodone pills. Detective Ketner testified that Defendant told him he had a prescription but that Defendant was unable to produce one. Detective Ketner sent the fentanyl patch and the pills to the Tennessee Bureau of Investigation ("TBI") to be tested.

Detective Ketner began to administer the three standardized field sobriety tests ("HGN," walk-and-turn, and the one-leg stand); however, due to Defendant's physical condition -- "troubles with his hip" and "pins in his shoulder" -- Detective Ketner let Defendant perform a dexterity test and an alphabet test instead of the one-leg stand. Detective Ketner said that he took Defendant's medical condition into account when administering the sobriety tests. Defendant performed "satisfactory" on the dexterity test and performed "consistent with someone who's impaired" on the walk-and-turn and alphabet tests.[2]

When Defendant first stepped out of the vehicle, he was not wearing a coat. Detective Ketner testified that he did not feel it was safe for Defendant to get back inside the vehicle to get his coat until additional officers arrived. Detective Ketner agreed that it was "not exactly easy for anybody to stand out there in the cold . . . and try to do some of [the] physical tests."

On cross-examination, Detective Ketner agreed that there were multiple things Defendant did that indicated he was not impaired. Detective Ketner agreed that, before he pulled Defendant over, Defendant was driving "very well." Detective Ketner further agreed that maintaining speed and maintaining lane control are two things officers look for in determining whether someone is impaired and that Defendant maintained both his speed

---

[2] There is nothing in the record to indicate Defendant's performance on the HGN test.

and lane control prior to the stop. It took Defendant forty-three seconds to pull over, which Detective Ketner felt was "too long." Detective Ketner agreed that Defendant was "coherent" when he spoke with him and that Defendant said "he had his seat belt on." Detective Ketner agreed that Defendant did not have trouble standing up on his own.

However, Detective Ketner ultimately determined that Defendant was impaired and placed him under arrest for DUI. Detective Ketner testified that he based this determination on "everything that [he] witnessed and everything that [he] saw at the time: [t]he odor of the alcohol, the vehicle, his performance on the standardized field sobriety test[s], the prescription medications [he] found on [Defendant], [and] the fentanyl patch on his shoulder." Detective Ketner's patrol car had an "in-car" video camera which captured these events. Portions of the video were played for the jury, and Detective Ketner pointed out Defendant's actions that led him to conclude that Defendant was impaired.

On the way to the jail, Defendant told Detective Ketner that he had taken one Oxycodone. Detective Ketner asked Defendant if he would consent to a blood draw and read Defendant the implied consent form. Detective Ketner testified that Defendant took five minutes to think about it but ultimately said "no."

TBI Agent Dawn Mackey testified that she tested the patch and pills found on Defendant. The patch tested positive for fentanyl, and the pills tested positive for Oxycodone.

Mr. Timothy Crawley testified that he was with Defendant on the night of February 27 when they were stopped by Detective Ketner. Mr. Crawley stated that they were coming from "Bud's Bar" where Mr. Crawley worked and that Defendant came there to give him a ride home at approximately 11:00 p.m. Mr. Crawley testified that Defendant waited on him to finish stocking the coolers. While Defendant was waiting, Mr. Crawley stated that he "bought [Defendant] a beer, but [Defendant] didn't drink it." Mr. Crawley was drinking "heavily" that night but could not give a specific number of drinks that he had. Mr. Crawley did "not really" remember talking to Detective Ketner after he stopped Defendant's vehicle.

Detective Ketner was recalled as a rebuttal witness. Detective Ketner recalled that he talked to Mr. Crawley on February 27 after additional officers arrived at the scene. Detective Ketner asked Mr. Crawley how many beers he saw Defendant consume that night, and Mr. Crawley told him he saw Defendant drink "four or five" beers at the bar.

The jury convicted Defendant of DUI and of simple possession of a Schedule II controlled substance. The trial court sentenced Defendant to a total effective sentence of eleven months and twenty-nine days with a seventy-five percent release eligibility,

suspended to forty-eight hours to serve in jail, and the remainder to be served on supervised probation. Defendant filed a timely motion for new trial, which the trial court denied following a hearing. Defendant now timely appeals.

## Analysis

On appeal, Defendant argues that the trial court erred in denying the motion to suppress evidence seized as a result of an illegal stop. He contends that the officer's reason for the stop did not rise to the level of reasonable suspicion required. Defendant also argues that the evidence was insufficient to sustain his DUI conviction because the proof did not show beyond a reasonable doubt that Defendant was impaired.

### Motion to Suppress

The applicable standard of review for suppression issues is well-established. A trial court's findings of fact are binding on this court unless the evidence in the record preponderates against them. *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* The prevailing party is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing and all reasonable and legitimate inferences that may be drawn therefrom. *Id.* The trial court's application of law to the facts is reviewed under a de novo standard with no presumption of correctness. *Id.* (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). When reviewing a trial court's ruling on a motion to suppress, this court may consider the entire record, including the proof presented at the suppression hearing as well as at trial. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005); *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998). "Findings of fact made by the trial judge after an evidentiary hearing of a motion to suppress are afforded the weight of a jury verdict, and this court will not set aside the trial court's judgment unless the evidence contained in the record preponderates against his findings." *State v. Adams*, 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992).

Generally, "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 525, 629 (Tenn. 1997). A warrant is not required for an investigatory stop "when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997); *see also Terry v. Ohio,* 392 U.S. 1, 21 (1968); *State v.*

*Binette*, 33 S.W.3d 215, 218 (Tenn. 2000); *Yeargan*, 958 S.W.2d at 630; *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity . . . , and it is determined by considering the totality of the circumstances surrounding the stop[.]" *Binette*, 33 S.W.3d at 218 (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Alabama v. White*, 496 U.S. 325, 330 (1990)).

> Circumstances relevant to [evaluating reasonable suspicion] include, but are not limited to, the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him.

*Yeargan*, 958 S.W.2d at 632 (citing *Watkins*, 827 S.W.2d at 294; *United States v. Cortez*, 449 U.S. 411, 418 (1981); *Terry*, 392 U.S. at 21).

The trial court implicitly credited the testimony of Detective Ketner in finding that he had reasonable suspicion to conduct a brief, investigatory stop on Defendant's vehicle. The trial court stated that the officer "said that he saw the [D]efendant coming by without a seat belt on. That would give the officer probable cause to stop the vehicle."[3] Detective Ketner's personal objective observations led him to believe that Defendant was driving without a seat belt. His patrol car was positioned so that he could see passing vehicles, and his headlights were on so that he could see inside the vehicle. Detective Ketner was trained in seat belt detection when it is dark outside, and he was able to look into Defendant's vehicle and see that Defendant was not wearing a seat belt. Failure to wear a seat belt is a criminal offense. *See* Tenn. Code Ann. § 55-9-603 (2016). Thus, Detective Ketner had a particularized and objective basis for believing that Defendant was committing the criminal activity of not wearing a seat belt while driving. Therefore, based on the totality of the circumstances, Detective Ketner had reasonable suspicion to conduct a brief, investigatory stop of Defendant's vehicle. Further, the Sixth Circuit and this court have upheld investigatory stops based on seat belt law violations. *See U.S. v. Draper*, 22 Fed. Appx. 413, 415 (6th Cir. 2001); *State v. Carl Martin*, No. W2002-00066-CCA-R3-CD, 2003 WL 57311, at *4 (Tenn. Crim. App. Jan. 2, 2003). The evidence does not preponderate against the trial court's findings. Therefore, the investigatory stop was proper, and the trial court did not err in denying the motion to suppress. Defendant is not entitled to relief on this issue.

---

[3] While the trial court found the officer had "probable cause" to stop the vehicle, reasonable suspicion is all that was required. *Terry,* 392 U.S. at 21.

*Sufficiency of the Evidence*

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

It is unlawful for a person to drive an automobile on any public roadway or highway while "[u]nder the influence of any intoxicant, . . . controlled substance, . . . drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control or oneself that the driver would otherwise possess." Tenn. Code Ann. 55-10-401(1) (2016). Oxycodone and fentanyl are controlled substances. Tenn. Code Ann. § 39-17-408(b)(1)(M) (2016); § 39-17-406(b) (2016). Alcohol is an intoxicant. *State v. Clark*, 355 S.W.3d 590, 594 (Tenn. Crim. App. 2011).

Here, Defendant was in the driver's seat of a truck driving on a public highway. Detective Ketner testified that he smelled alcohol coming from the vehicle and from Defendant himself and that he saw an open container inside of the vehicle. Defendant openly admitted that he had taken an Oxycodone, which Detective Ketner testified can cause impairment. Defendant also had a fentanyl patch on his arm. Detective Ketner, a trained law enforcement officer, administered multiple standardized field sobriety tests to Defendant, and he ultimately concluded that Defendant was impaired. This court has previously held that sufficient evidence existed for a DUI conviction when the trial court only relied on the arresting officer's testimony that the defendant was driving under the influence. *State v. Vasser*, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993). Taken in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to

find that Defendant drove under the influence as prohibited by law. Defendant is not entitled to relief on this issue.

## Conclusion

For the foregoing reasons, we affirm the judgments of the trial court.


_____
ROBERT L. HOLLOWAY, JR., JUDGE