**STATE of Tennessee, Appellee,**

v.

**Frank E. ADAMS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 29, 1992.

Permission To Appeal Denied
June 28, 1993.

· Karl F. Dean, Jeffrey A. DeVasher, Laura C. Dykes, Nashville, for appellant.

Charles W. Burson, Atty. Gen. and Bettye Springfield, Asst. Atty. Gen., Victor S. Johnson, III, Dist. Atty. Gen. and Thomas B. Thurman, Katrin A. Novak, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

BIRCH, Judge.

The Criminal Court of Davidson County, the Honorable J. Randall Wyatt, Jr. present and presiding, entered judgment upon a jury verdict convicting Frank E. Adams, the defendant, of murder perpetrated during the commission of a felony [1] and of two counts of aggravated robbery.[2]  The trial judge sentenced the defendant to imprisonment for life on the murder count and ten years for each robbery.  The robbery sentences are to be served consecutively to the each other and to the life sentence, constituting an effective sentence of life plus twenty years.

Adams appeals as a matter of right; he urges that the trial judge erred: (1) in admitting the defendant's pretrial statements into evidence; (2) in consolidating the indictments for trial; (3) in admitting a co-defendant's statement into evidence; and (4) in ordering consecutive sentences.

---

1.  T.C.A. § 39–2–202 (1982).

2.  T.C.A. § 39–2–501 (1982).

We have carefully reviewed the record and have given thoughtful consideration to the issues presented. The judgment of the trial court is affirmed.

## I

Since the defendant does not contest the sufficiency of the convicting evidence, we will summarize the salient facts. The record establishes that on February 5, 1989, at about 2:30 a.m., the defendant and Timothy Allen Crowell robbed a convenience market clerk with a deadly weapon. One of the two remained outside as "look-out" and "getaway car" driver, but we are unable to determine from the record the precise role each played. At about 3:50 a.m. the same morning, the defendant and Crowell robbed and killed Thomas Weser, an exchange student at a local university.

Although Adams and Crowell were jointly charged with the robbery of the clerk and the robbery and murder of Weser, the cases were severed for trial, and we now have before us only Adams' appeal.

## II

The first issue concerns two statements made by Adams. Police investigators had developed him as a suspect, and they found him at the home of his female friend. The investigators invited him to accompany them to their police van. Equipped with a writing desk and tape recorder, the van served as a "field office."

Once inside the van, Robert Moore, a detective sergeant, told Adams:

This is a very serious conversation we need to have. It's a serious matter that we feel like you may be involved with. And it concerns a death of Thomas Weser on the Vanderbilt campus.

Moore took extraordinary pains to make Adams understand that he was not under arrest and that he was free to leave the van whenever he wished. Moore also emphasized to Adams that not enough information had been developed at that point to justify arresting him. Moore then asked Adams, "Are you involved in this case?"

Adams answered, "Yes, but I did not shoot the man. I was there." Adams then described the vehicle used in the commission of the crime.

At this point, Moore advised Adams of his rights under *Miranda* [3] and asked him to ride with him or meet him at police headquarters. Adams chose to ride in the van. Upon arrival at headquarters, Moore assigned Detective Mike Smith to continue the investigation, introduced Adams to Smith, and left the two alone.

Smith advised Adams of his *Miranda* rights, and Adams signed a waiver of those rights. He related some of the details of the crime to Smith. He reiterated that Crowell, not he, had killed Weser. Once Adams understood that he would be charged with the murder of Weser anyway, he asked to talk with his lawyer. Adams made no statements after this request. The lawyer of his choice was contacted, and he talked with her. While being escorted to the magistrate's chambers, Adams told Smith, "Tell them I cooperated."

The defendant testified at a hearing to suppress these statements. He related that as soon as he entered the van he requested to talk with his lawyer. Further, Adams testified that he had signed the waiver form for Smith only because of coercion or duress.

As to the statement made to Moore in the van, the trial court found that Adams was at that time very amicable and cooperative with Moore. Controlling, however, is the trial judge's finding that Adams was not in custody in the *Miranda* sense when he discussed the case with Moore. Thus, the trial judge concluded that *Miranda* was inapplicable under these circumstances and ruled that the statement would be admitted into evidence.

Regarding the statement made to Smith at headquarters, the trial judge refused to accredit Adams' claims that he was physically intimidated and coerced into making the statement. Instead, the trial judge found that Smith had fulfilled the *Miranda*

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

requirements and concluded that Adams' in-custody statement was a voluntary one and would be admitted into evidence at his trial.

■ Findings of fact made by the trial judge after an evidentiary hearing of a motion to suppress are afforded the weight of a jury verdict, and this court will not set aside the trial court's judgment unless the evidence contained in the record preponderates against his findings. *State v. Killebrew,* 760 S.W.2d 228 (Tenn.Crim.App. 1988).

The evidence contained in the record before us does not preponderate against the trial judge's findings. Accordingly, we uphold the admission of both of Adams' pretrial statements.

### III

■ The second issue before us is the consolidation of the indictments for trial pursuant to Rules 8 and 14 of the Tennessee Rules of Criminal Procedure. Prior to trial, the state moved to consolidate indictments numbered 90–S–1209[4] and 90–F–2064[5] pursuant to Rule 8(b) of Tennessee Rules of Criminal Procedure, which provides for joinder of offenses that "constitute parts of a common scheme or plan or ... of the same or similar character." The assistant district attorney general argued that the crimes were committed with the same "intent"; that is, to obtain money with which to purchase drugs. Thus, the state advanced its theory that the facts and circumstances of the two cases "overlapped" sufficiently to establish a "common scheme or plan."

The evidence adduced at the hearing on the consolidation motion established that at about 2:30 a.m., a male who fit Crowell's description assaulted a convenience store clerk with a small handgun and stole money. An accomplice waited outside. At about 3:30 a.m. on the same morning, a male accosted Weser about two or three miles away from the convenience store. The person shot Weser and took his wallet while a second person remained in their car.

Based on this evidence, the trial court consolidated the two offenses for trial pursuant to Rules 8 and 13, Tennessee Rules of Criminal Procedure.

On appeal the state argues that because both crimes were committed to obtain money with which to purchase drugs, they "constitute a common scheme or plan."

We disagree with the state's insistence on appeal that the cases were subject to mandatory joinder as provided in Rule 8(a), Tennessee Rules of Criminal Procedure. The felony-murder charge against Adams could have been tried without any reference whatsoever to the earlier armed robbery, and the converse is likewise true. No physical evidence linked the cases together except the evidence that both crimes were committed by the same two persons.

As we stated in *State v. Morris,* 788 S.W.2d 820 (Tenn.Crim.App.1990) (quoting *State v. Peacock,* 638 S.W.2d 837 (Tenn. Crim.App.1982)), Tennessee Rules of Criminal Procedure 8(b) and 14(b)(1) justify consolidation when:

> two or more sets of offenses must be so similar in *modus operandi* and occur within such a relatively close proximity of time and location to each other that there can be little doubt that the offenses were committed by the same person(s). The mere fact that a defendant has committed a series of armed robberies, or a series of rapes, or a series of other crimes does not mean that they are part of a common scheme or plan although the offenses may be of the 'same or similar character.'

Granted, the offenses were similar; however, we find the suggestion of shared motivation for the two otherwise separate crimes to be insufficient under 8(b) and 14(b)(1) to establish a "common scheme or plan." Accordingly, we hold that the connection between the two cases was far too tenuous to support joinder or consolidation, and the trial judge erred in ordering consol-

---

4. Charging armed robbery and murder of Thomas Weser.

5. Charging armed robbery of Kurt Zimmerman, a convenience store clerk.

idation under Rules 8(a), 8(b), and 14(b)(1), Tennessee Rules of Criminal Procedure.

■ We conclude, nevertheless, that this error does not require a new trial because the evidence of guilt adduced against the defendant in both cases was abundant and legally sufficient. In our view, the result would have been the same were the cases tried before different juries. This issue is overruled.

## IV

■ The defendant next contends that the trial court erred in admitting certain testimony. To reiterate, Crowell and Adams were jointly indicted for the murder of Weser. However, the case against Adams was severed and tried first. .

Lisa Cantrell testified as a state witness. At the time of the events herein involved, she resided with her father. Through her testimony, the state established that Adams and Crowell were together shortly before and shortly after the killing. On cross-examination Cantrell related a statement made by Crowell just after he had been in a fight. She heard him say to the man with whom he had fought that "he'd shot someone before and he could shoot him also." The obvious purpose of this testimony was to suggest that Crowell had been the shooter, not Adams.

To counter this testimony, the state, in its direct examination of Detective Smith, introduced a statement made by Crowell that Adams was the person who shot Weser. Preliminary to the adduction of this statement, the assistant district attorney general alerted the trial judge and the defendant's lawyer to his intentions, and a lively discussion outside the jury's presence ensued.

The trial judge ruled the testimony admissible under Rule 806, Tennessee Rules of Evidence, which provides:

When a hearsay statement has been admitted in evidence, the credibility of the declarant may be attacked and, if attacked, may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

In our view, the admission of the evidence in question was clearly authorized by Rule 806.

Moreover, immediately after Smith's testimony, the trial judge cautioned the jury that the testimony was to be considered only as it might affect the credibility of Crowell's statement as contained in Cantrell's testimony.

Furthermore, the trial judge properly instructed the jury on the law of aiders and abettors. Because of the abundant proof that Adams and Crowell were acting together, it is unnecessary for us to determine at this point which one fired the fatal shot.

This issue has no merit.

## V

Based on a finding that the defendant was a "dangerous offender," [6] the trial court ordered each of the two ten-year sentences to be consecutive to each other and to the sentence of life imprisonment. The defendant challenges this finding, contending that the trial court erred in ordering consecutive sentences.

■ Our review of this issue is *de novo*, with a presumption that the determinations of the trial judge are correct. Consecutive sentencing is appropriate where the trial court expressly finds that such confinement is necessary to protect the public from further criminal conduct by the defendant. *Gray v. State*, 538 S.W.2d 391 (Tenn.1976); *State v. Woods*, 814 S.W.2d 378 (Tenn.Crim.App.1991). Here, the trial

---

**6.** T.C.A. § 40–35–401(a) and (d) (1990); *Gray v.*   *State*, 538 S.W.2d 391 (Tenn.1976).

court expressly found that imposition of consecutive sentences was necessary for the protection of society. We adopt this finding and uphold the sentence.

The record before us is without reversible error; the judgment is affirmed.

BYERS and JONES, JJ., concur.