IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 17, 2001

## STATE OF TENNESSEE v. RONALD PRENTICE

**Appeal from the Criminal Court for Davidson County**
**Nos. 98-D-2523, 99-A-13     Seth Norman, Judge**

---

**No. M2000-02937-CCA-R3-CD - Filed December 28, 2001**

---

The defendant, Ronald Prentice, was convicted of two counts of aggravated assault. The trial court imposed a sentence of four years on each count, with a concurrent one year sentence of incarceration and consecutive sentences of three years probation. In this appeal of right, he argues that the trial court erred (1) by improperly joining the offenses, (2) by excluding testimony regarding his divorce from the victim, and (3) by prohibiting a hypothetical question to an expert witness for the state. The judgment of the trial court in case number 98-D-2523 is affirmed. The judgment of the trial court in case number 99-A-13 is reversed and remanded for a new trial.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed in Part, Reversed in Part**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Craig Myrick, Nashville, Tennessee (at trial), and Bruce Poag, Nashville, Tennessee (on appeal), for the appellant, Ronald Prentice.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; and Carrie Daughtrey and Christopher Buford, Assistant District Attorneys General, for the appellee, the State of Tennessee.

## OPINION

In March of 1998, the defendant and his wife, Willie Prentice, were experiencing marital difficulties. On March 8, Ms. Prentice, the 58-year-old victim, met the defendant at his place of employment, Clover Bottom Development Center. When she arrived sometime between 11:30 P.M. and midnight, however, the defendant locked her inside the facility and forced her to remain there for approximately seven and a half hours. During the time she was held, the defendant struck the victim repeatedly with an iron pipe, causing severe bruising to her legs, abdomen, and buttocks and causing a laceration to her forehead. When his work shift ended, the defendant walked the victim to her car and she waited in the parking lot at his request, while he briefly went back into the

building. When he returned, he directed her to drive herself home and told her that he would check on her when he got there. He also threatened to kill her if she reported the incident. The victim then drove straight home.

Approximately one week later, the victim told her daughter, Sandra Williamson, about the beating. Ms. Williamson took the victim to the hospital for medical treatment. Hospital employees alerted the police.

After questioning the victim about the incident, the police interviewed the defendant. While being questioned by police, the defendant admitted striking the victim but insisted that he hit her only on the legs. As a result of the investigation, the defendant was indicted on two counts of especially aggravated kidnapping and two counts of aggravated assault.

When she was released from the hospital, the victim moved into a hotel, initiated divorce proceedings against the defendant, and obtained a restraining order. While their divorce was pending, the court ordered the victim and the defendant to alternate months residing in the marital home. The victim was scheduled to reside in the house during the entire month of August in 1998. On August 28, 1998, the defendant entered the residence, went into the bedroom, and got into bed with the victim. According to the victim, the defendant forced his tongue into her mouth and bit her breast. When the victim threatened to call the police, the defendant asked for five minutes to talk, asking for reconciliation. They moved into the kitchen to talk. When the victim was unresponsive to the defendant's efforts, he grabbed her by the throat and ordered her to listen. He then demanded a loan to pay off his credit card debt. When the victim refused, the defendant threatened her with a knife sharpener. Eventually, he agreed to leave on the condition that she give him $2 for gas. The victim refused to give the defendant any money, but promised she would not call the police if he left. Shortly thereafter, the defendant complied with her request.

The victim reported the incident to police. A few days later, the victim filed a written report in the domestic violence division. She also obtained a warrant against the defendant for aggravated assault. In January of 1999, the defendant was indicted for aggravated assault and sexual battery.

At the state's request and over objections by the defendant, the trial court joined all offenses for trial. The jury convicted the defendant of three counts of aggravated assault. The trial court merged two of the counts and sentenced the defendant to concurrent four-year sentences; one year to be served at 100% in the Davidson County Workhouse and the balance to be served on probation.

I

In this appeal, the defendant initially claims that the trial court improperly joined the offenses for trial. "[D]ecisions to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) are to be reviewed for an abuse of discretion." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). Additionally, "a trial court's refusal to sever offenses will be reversed only when the 'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn.

1997)). "[W]hen a defendant objects to a pre-trial consolidation motion by the state, the trial court must consider the motion by the severance provisions of Rule 14(b)(1), not the 'same or similar character' standard of Rule 8(b)." Spicer v. State, 12 S.W.3d 438, 443 (Tenn. 2000).

Rule 14 (b)(1) provides as follows:

> If two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b), the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others.

Tenn. R. Crim. P. 14(b)(1). The "primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of indictment had been severed." State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984). Tennessee Rule of Evidence 404(b) prohibits the admission of "other crimes, wrongs, or acts" of the defendant when admitted only to show the defendant's propensity to commit the crime charged. See Tenn. R. Evid. 404(b). Rule 404(b) does not, however, bar the admission of acts alleged to be part of a common scheme or plan when relevant to a material issue at trial. See Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980). Before a trial court may deny a severance request, it must hold a hearing on the motion and conclude from the evidence and argument presented at the hearing that (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of each offense is relevant to some material issue in the trial of all the other offenses; and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant. Spicer, 12 S.W.3d at 445; see also Tenn. R. Evid. 404(b)(3).

"[A] common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." State v. Moore, 6 S.W.3d 235, 239 n.7 (Tenn. 1999). Three types of common scheme or plan evidence are recognized in Tennessee: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. "'In order to be 'parts of a common scheme or plan' as contemplated by Rules 8(b) and 14(b)(1), two or more sets of offenses must be so similar in modus operandi and occur within such a relatively close proximity of time and location to each other that there can be little doubt that the offenses were committed by the same person(s).'" State v. Wooden, 658 S.W.2d 553, 557 (Tenn. 1983) (quoting State v. Peacock, 638 S.W.2d 837, 840 (Tenn. Crim. App. 1982)). Moreover, this court ruled in State v. Hallock that:

> [T]he mere existence of a common scheme or plan is not a proper justification for admitting evidence of other crimes. Rather, admission of evidence of other crimes which tends to show a common scheme or plan is proper to show identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue.

875 S.W.2d 285, 292 (Tenn. Crim. App. 1994).

Here, the state concedes that the offenses were not "signature crimes," and were not part of the same transaction. Instead, the state argues that the offenses were part of a "larger continuing plan to intimidate and terrorize the victim." This category of continuing plan or conspiracy requires proof of "a working plan, operating towards the future with such force as to make probable the crime for which the defendant is on trial." State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995).

Neither the trial court's order consolidating the offenses nor a transcript of the pretrial hearing, if any, was included in the record on appeal. Nevertheless, the record demonstrates that the state moved to consolidate and the trial court granted the motion. Additionally, the defendant presented the issue as a ground for new trial.

The evidence adduced at trial may be a basis for our analysis. Cf. Spicer, 12 S.W.3d at 445 (stating that an appellate court should usually restrict its review of joinder to the evidence produced during the pretrial hearing on consolidation); Hoyt, 928 S.W.2d at 945. The initial question is whether the offenses constituted a common scheme or plan. Webster v. State, 425 S.W.2d 799, 811 (Tenn. Crim. App. 1967). The proof established that, in March of 1998, the defendant held the victim against her will for some seven and one-half hours and beat her with an iron bar. Over five months later, on August 28, 1998, the defendant entered the victim's bedroom, assaulted her, and then threatened her with a knife sharpener when she refused to loan him money. The offenses are similar only in that they involve the same defendant and victim; otherwise they are wholly unrelated in time, location, and character. Even if, as the state suggests, the defendant's motive in both offenses was to terrorize and intimidate the victim, shared motivation for two otherwise unrelated crimes is not sufficient to establish a "common scheme or plan." State v. Adams, 859 S.W.2d 359, 362. (Tenn. Crim. App. 1992). Before trial, the state agreed to limit its proof to conduct occurring on certain dates. That militates against the argument that the offenses were part of a larger, continuing plan. In our view, the evidence does not establish that the offenses were part of a common scheme or plan.

Moreover, the evidence of the March offenses would not be admissible at the trial of the August offenses as required by the second prong of Rule 14(b)(1). Likewise, evidence of the August offenses would not be admissible at the trial of the March offenses. This state recognizes three instances when such evidence is admissible: (1) to prove identity, (2) to prove intent, and (3) to rebut a defense of mistake of fact or accident. State v. McCrary, 922 S.W.2d 511, 514 (Tenn. 1996). Here, intent and identity were not at issue. While the state argues that evidence of the March 8, 1998, incident would be admissible at trial of the August 28, 1998, incident to prove absence of mistake or accident, the defendant never relied on either as a defense. The state makes no argument with regard to the admissibility of the August incident at the trial of the March incident and we know of none. In our view, the trial court erred by consolidating the offenses.

Our next inquiry is what, if any, prejudice the defendant suffered as a result of the improper joinder. Tennessee Rule of Criminal Procedure 52 states that "[n]o judgment of conviction shall be

reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). "In most severance cases, 'the line between harmless and prejudicial error is in direct proportion to the degree . . . by which proof exceeds the standard required to convict. . . .'" Spicer, 12 S.W.3d at 447-48 (quoting Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979)). Our supreme court has held that the error is harmful when, because the evidence of guilt was not overwhelming, the failure to sever offenses invited the jury to infer guilt from the propensity of the accused to commit crime. Shirley, 6 S.W.3d at 250-51. In Spicer, our high court concluded that, because the evidence of guilt was sufficient but not overwhelming, the failure to sever offenses required reversal. 12 S.W.3d at 447. This court, in State v. Michelle Ferguson, No. E1999-01302-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Aug. 3, 2000), held that the trial court's failure to sever was reversible error because "[a]lthough the evidence . . . was legally sufficient to support all three of [d]efendant's convictions, the evidence was far from overwhelming." Cf. State v. Michael Anderson Peek, No. E1998-00038-CCA-R3-CD (Tenn. Crim. App. May 3, 2000) (finding that the failure to sever was harmless where the evidence of the defendant's guilt was overwhelming).

As to case number 98-D-2523, the March incident, the evidence was overwhelming. The victim testified that the defendant beat her with an iron bar for several hours, resulting in serious injuries which were documented through photographs and attested to by her treating physician. Additionally, the defendant confessed to officers that he hit his wife in the legs with an iron bar. In consequence, the improper joinder of offenses was harmless as to this conviction.

This analysis, however, does not lead to the same conclusion with regard to case number 99-A-13, the August 1998 incident. The proof of this offense consisted entirely of the victim's testimony that the defendant kissed her, bit her breast, and threatened her with a knife sharpener when she refused to loan him money. While this would be sufficient to support the conviction, it was not overwhelming. In our view, the trial court's failure to sever the offenses allowed the jury to infer the defendant's guilt from his propensity to commit acts of violence against the victim. Thus, a new trial on this offense is required. See State v. Lucius Macineo Moss, No. 03C01-9501-CR-00002 (Tenn. Crim. App., at Knoxville, May 2, 1996) (affirming in part and reversing in part where the failure to sever was harmful as to defendant's murder conviction and harmless as to his convictions for aggravated robbery and reckless endangerment); see also Hackney v. Commonwealth, 504 S.E.2d 385, 389 (Va. Ct. App. 1998) (affirming defendant's firearm conviction and reversing his conviction for grand larceny where the trial court erroneously failed to sever); Elerson v. State, 732 P.2d 192, 195-96 (Alaska Ct. App. 1987) (affirming one out of two convictions where the trial court's failure to sever was erroneous); Taylor v. State, 455 So.2d 562, 565 (Fla. Dist. Ct. App. 1984) (holding that trial court's failure to sever was error, but required reversal only of sexual battery conviction because evidence as to defendant's conviction for possession of a weapon was overwhelming).

II

The defendant next contends that the trial court erred by refusing to admit testimony regarding the circumstances of the divorce. Specifically, the defendant sought to show, through the cross-examination of the victim's daughter, that the victim fabricated the incidents in order to obtain a more favorable property settlement. The trial court ruled that the evidence was not relevant because the offenses preceded the divorce settlement.

"Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would have been without the evidence." Tenn. R. Evid. 401. In State v. Forbes, this court discussed the standard of review of a trial court's determination of relevancy:

> "Because an assessment of whether a piece of evidence is relevant requires an understanding of the case's theory and other evidence as well as a familiarity with the evidence in question, appellate courts give great deference to a trial judge's decision on relevance issues. Often it is stated that a trial court's decision on relevance will be reversed only for an abuse of discretion. . . ."

918 S.W.2d 431, 449 (Tenn. Crim. App. 1995)(quoting Neil P. Cohen, Tennessee Law of Evidence § 401.5 (2d ed. 1990)).

In this instance, the trial court determined that the details of the victim's divorce from the defendant, which occurred some time after the August 1998 offense, were not relevant to any material issue at trial. The defendant contends that this evidence would have been relevant to show that the victim had a motive to manufacture the evidence. The defendant was allowed to present evidence indicating a motive to lie through cross-examination of both the victim and the physician who treated her after the March 1998 offense. Any questioning of the victim's daughter in this area, while marginally relevant, would have been cumulative. See Tenn. R. Evid. 403. Thus, any error would have been harmless.

III

Finally, the defendant argues that the trial court should have permitted him to pose a hypothetical question to the state's expert. The specific rules of evidence that govern the issue of admissibility of scientific proof in Tennessee are Tennessee Rules of Evidence 702 and 703. Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Tenn. R. Evid. 702. Rule 703 states that:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Tenn. R. Evid. 703.

In McDaniel v. CSX Transportation, Inc., our supreme court concluded that to determine "the standard of admissibility of scientific evidence requires an analysis of the unique language found in Rules 702 and 703 of the Tennessee Rules of Evidence." 955 S.W.2d 257, 264 (Tenn. 1997). Rule 702, the court noted, requires that the evidence "substantially assist the trier of fact," while the federal rule requires only that the evidence "assist the trier of fact." Id. The court, therefore, concluded that the probative force of expert testimony must be stronger in this state's courts than under the federal rules. Id. Similarly, according to Rule 703, a Tennessee court "'shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate a lack of trustworthiness.'" Id. (quoting Tenn. R. Evid. 703). Even if expert testimony tends to provide substantial assistance to the jury, the testimony is admissible only if it is based upon reliable facts or data. Shuck, 953 S.W.2d at 668.

Generally, the admission of expert testimony is largely entrusted to the sound discretion of the trial court. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). The trial court's decision may be overturned on appeal upon a showing that the trial court abused its discretion. Id. As noted above, "an appellate court should find an abuse of discretion when it appears that a trial court applied an incorrect legal standard or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." Shuck, 953 S.W.2d at 669 (citing Ballard, 924 S.W.2d at 661).

It has long been the law in Tennessee that it is not proper for hypothetical questions to assume facts that are not supported by the evidence. Pentecost v. Anchor Wire Corp., 662 S.W.2d 327, 328 (Tenn. 1983); Nix v. State, 530 S.W.2d 524, 530 (Tenn. Crim. App. 1975); Bailey v. State, 479 S.W.2d 829, 835 (Tenn. Crim. App. 1972). An appellate court, however, is not required to search the entire record to determine whether every possible fact is listed in the question or whether every hypothetical fact is supported by the evidence presented by the opposing party. Pentecost, 662 S.W.2d at 329. The issue is resolved "by determining whether the question contained enough facts, supported by evidence, to permit an expert to give a reasonable opinion which is not based on mere speculation or conjecture and which is not misleading to the trier of fact." Id.

Although Tennessee Rule of Evidence 705 abolishes the requirement of using hypothetical questions, the rule does not disallow them. Tenn. R. Evid. 705, Advisory Commission Comments. Rule 703 allows an expert to base an opinion on facts not in evidence if they are of a "type reasonably relied upon by experts in the particular field" and are trustworthy. Tenn. R. Evid. 703. Of course, an expert's response to a hypothetical question "must substantially assist the trier of fact

to understand the evidence or to determine a fact in issue . . . ." Tenn. R. Evid. 702.  A question based on untrustworthy or incomplete data or that is misleading will not be of any assistance to the trier of fact.

After the victim's treating physician testified that the injury to the victim's head was a minor cut, defense counsel asked the following question:

> If you were working in ER and you got the information that a case was – that a patient was coming in on an ambulance, whatever, and the information you had was that they had been hit in the head with a one and a half to two inch iron bar, is that – this kind of injury the picture you would have in your head that you would be preparing for as they come in?

The state objected on the basis that the question required the doctor to speculate.  The doctor did not observe the victim when the injury to her head was fresh, as contemplated by the hypothetical, because the victim waited a week before she sought treatment for her injuries.  Because the hypothetical was not based on the facts adduced at trial, the trial court did not abuse its discretion in disallowing the question.

Accordingly, the judgment of the trial court in case number 98-D-2523 is affirmed.  The judgment of the trial court in case number 99-A-13 is reversed and remanded for a new trial.

_____
GARY R. WADE, PRESIDING JUDGE