IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2022 Session Heard at Austin Peay State University

**STATE OF TENNESSEE v. DAVID WAYNE EADY**

**Appeal from the Criminal Court for Davidson County**
**No. 2018-B-952      Cheryl A. Blackburn, Judge**

_____

**No. M2021-00388-CCA-R3-CD**
_____

CAMILLE R. MCMULLEN, J., concurring and dissenting, in part.

For the reasons that follow, I am compelled to dissent from the section of the majority opinion affirming the decision of the trial court to deny severance of the offenses in this case. I agree that the trial court correctly determined that permissible joinder, pursuant to Rule 8(b)(2), was proper because of the similar nature of the crimes alleged in this case. In these circumstances, a defendant has an absolute right under Rule 14(b)(1) to have offenses separately tried *unless* the prosecution shows (1) that the offenses are part of a common scheme or plan, and (2) evidence of each crime would be admissible in the trial of the others. State v. Garrett, 331 S.W.3d 392, 401 (Tenn. 2011); State v. Toliver, 117 S.W.3d 216, 228 (Tenn. 2003); see also State v. Moore, 6 S.W.3d 235, 239 n. 7 (Tenn. 1999) ("[A] common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes."). To justify consolidation here, the State relied upon the second category of common scheme or plan evidence, that each of the offenses committed and to be joined were part of a larger, continuing plan or conspiracy. State v. Garrett, 331 S.W.3d at 404 (observing that there are three types of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute signature crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction) (internal citations and quotations omitted). Because there was no proof that the offenses were part of a larger, continuing plan, I would have concluded that the trial court erred in denying the severance request under Rule 14(b)(1). Garrett, 331 S.W.3d at 403 (the prosecution bears the burden of producing evidence to establish that consolidation is proper).

Without repeating much of the same applicable legal framework as the majority, I will emphasize only the relevant portions of the law upon which we disagree as to interpretation. In State v. Adams, a mandatory joinder and consolidation case, the State argued that because a felony-murder and two counts of aggravated robbery were committed with the same "intent" that is "to obtain money with which to purchase drugs, they

'constitute a common scheme or plan.'" 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992). In rejecting this argument, this court stated, "the suggestion of shared motivation for the two otherwise separate crimes to be insufficient under 8(b) and 14(b)(1) to establish a 'common scheme or plan.'" Id. "[A] larger, continuing plan or conspiracy 'involves not the similarity between the crimes, but [rather] the common goal or purpose at which they are directed.'" State v. Denton, 149 S.W.3d 1, 15 (Tenn. 2004) (quoting State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995), overruled on other grounds by Spicer, 12 S.W.3d at 447); see State v. Hallock, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993) (rejecting the State's contention that the defendant's sex crimes against different victims in the same household can be consolidated based upon a common goal of achieving sexual gratification under the larger, continuing plan or conspiracy category). Hallock attempted to dispel any misapprehension about the larger, continuing plan category of common scheme or plan evidence with the following:

> The fallacy inherent in this thinking is easily exposed by the following example: X is on trial for three counts of burglary, each involving a different building, a different form of entry, and a different day. His overall purpose, however, was to acquire money for college. Clearly, without more, X is entitled to severance under Rule 14(b)(1).

Hallock, 875 S.W.2d at 290; see also State v. Raymond Griffin, No. W2001-01332-CCA-R3-CD, 2002 WL 1482689, at *7 (Tenn. Crim. App. Mar. 15, 2002) (rejecting State's argument that defendant's actions in "driving around the City of Memphis at night in order to target particular individuals" constituted larger, continuing plan for purposes of common scheme or plan prong of joinder because, other than the perpetration of multiple offenses, there was no unifying common goal or purpose which connected the individual robberies and accompanying crimes).

The larger, continuing plan or conspiracy category requires the State to put forth proof of "'a working plan, operating towards the future with such force as to make probable the crime for which the defendant is on trial.'" State v. Prentice, 113 S.W.3d 326, 331 (Tenn. Crim. App. 2001) (quoting Hoyt, 928 S.W.2d at 943) (rejecting the State's suggestion that shared motivation of defendant to terrorize victim was sufficient grounds for joinder of offenses as part of larger, continuing plan). "Each of the consolidated offenses must serve to further the goal or plan in existence at the time of the commission of the first offenses." State v. Timothy Leron Brown, No. M2017-00904-CCA-R3-CD, 2019 WL 1514551, at *28 (Tenn. Crim. App. Apr. 8, 2019), perm. app. denied (Tenn. Aug. 15, 2019); State v. Jawaune Massey, No. E2013-01047-CCA-R3-CD, 2014 WL 3661490, at *32 (Tenn. Crim. App. July 23, 2014). "The larger continuing plan category encompasses groups or sequences, or crimes committed in order to achieve a common ultimate goal or purpose." Hallock, 875 S.W.2d at 290. This is the reason the rulings

in Hallock and Adams, concerning the larger, continuing plan category have typically been restricted to cases involving crime sprees, where the defendant commits several crimes quite closely in time to one another. See State v. Allen Prentice Blye, No. E2001-01375-CCA-R3-CD, 2002 WL 31487524, at *6 (Tenn. Crim. App. Nov.1, 2002) (citing State v. Hall, 976 S.W.2d 121, 146 (Tenn. 1998) (noting also that "[t]he fact that a defendant has a common goal in committing crimes or that most of the crimes were committed in the same neighborhood does not mean that proof of the individual, disparate crimes will reveal a larger, continuing plan")). Where the State has not established evidence of a "'working plan' whereby the subsequent offenses are predictable or probable from the defendant's determination to commit the initial offenses (or vice versa)," the subsequent offenses cannot constitute parts of a larger, continuing plan. Id. at *31.

Naturally, if the trial court finds that no common scheme or plan existed, then it is unnecessary to consider the second prong of the test. See Raymond Griffin, 2002 WL 1482689, at *7. When common scheme or plan is found by the trial court, the next step in the analysis is to consider "whether evidence of one offense would be admissible in the trial of the other if the two offenses remained severed." Spicer v. State, 12 S.W.3d 438, 445 (Tenn. 2000) (citing State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984)). "In its most basic sense, therefore, any question as to whether offenses should be tried separately pursuant to Rule 14(b)(1) is 'really a question of evidentiary relevance.'" Id. (quoting State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999)). Because the primary inquiry in a question of severance under Rule 8(b)(1) is whether the evidence of one crime would be admissible in the trial of the others, the requirement that evidence of one of the offenses be relevant to some material issue in the trial of the other offenses, and the balancing of the probative and prejudicial value of the evidence is in essence an analysis under Tennessee Rule of Evidence 404(b). See Spicer, 12 S.W.3d at 445 (enumerating the three required findings by the trial court and citing Tennessee Rule of Evidence 404(b) as authority for requiring that the evidence be relevant to some material issue and that its probative value not be outweighed by any prejudicial effect). The general rule is that evidence of prior crimes, wrongs or acts is not admissible to establish a defendant's propensity or character, yet such evidence may be "admissible for other purposes." Tenn. R. Evid. 404(b); see also Moore, 6 S.W.3d at 239; Toliver, 117 S.W.3d at 230. Under Rule 404(b), evidence of one offense may be admissible in the trial of another offense to show (1) motive; (2) intent; (3) guilty knowledge; (4) identity of the defendant; (5) absence of mistake or accident; or (6) common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other. State v. Osborne, 251 S.W.3d 1, 12 (Tenn. Crim. App. 2007). Finally, the trial court must weigh whether the probative value of the evidence of the other offense/s is not outweighed by the prejudicial consequences of admission under Rule 404(b)(4). State v. Dotson, 254 S.W.3d 378, 387 (Tenn. 2008); Osborne, 251 S.W.3d at 12. The Tennessee Supreme Court has observed that admission of other crimes carries an inherent risk that the jury will consider the prior crime as

propensity evidence. Dotson, 254 S.W.3d at 387. Accordingly, any doubt about the propriety of the consolidation of similar offenses over a defendant's objection should be resolved in favor of the defendant. Garrett, 331 S.W.3d at 403; State v. Jose Gonzalez Bonilla, No. M2019-01193-CCA-R3-CD, 2020 WL 3791677, at *9 (Tenn. Crim. App. July 7, 2020).

In the trial court's order, after outlining the applicable law, the trial court determined, without elaboration, that "identity is a material issue at trial in all Counts of the Indictment, and the offenses charged . . . were part of a larger, continuing plan[.]" The extent of the trial court's application of the law in denying severance in this eleven-count indictment was as follows:

> Detective McGowan testified about his investigation of the string of robberies, which included (1) the November 26, 2017 stop of the Defendant to determine who used the vehicle viewed on surveillance footage, (2) attempts at tracking the Defendants vehicle (no robberies were committed while the vehicle was being tracked), and (3) obtaining the Defendants phone records, which showed his phone pinged near the robbery locations at the time the robberies were committed. The evidence to establish each individual robbery charge (summarized in the chart marked Ex. 1A) is "so related to each other that proof of one tends to establish the others." 20 Am. Jur. EVIDENCE § 314 (1939); Collard v. State, 526 S.W.2d 112, 114 (Tenn. 1975). The probative value is particularly significant and outweighs potential prejudice.

The Defendant then submitted a motion to reconsider the above denial of severance, noting (1) that the trial court failed to engage in the second step of the analysis and explicitly weigh the probative value against the prejudicial effect of each offense; and (2) providing supplemental authority, discussed in detail below, in support of the proposition that common scheme or plan based on the offense having been committed as part of a larger, continuing plan or conspiracy, cannot be premised on the goal of stealing money to purchase drugs. In response, the trial court issued an extensive order denying the motion to consider. The trial court emphasized the portion of Hallock noting that the overall purpose of committing unrelated robberies "to acquire money for college... without more would necessitate a severance." Hallock, 875 S.W.2d at 290 (emphasis in order). The trial court also acknowledged that "asserting unrelated crimes should be joined solely because they were committed to get money to buy drugs is insufficient for joinder." Adams, 859 S.W.2d at 362-363. The trial court pivoted from the supplemental authority, and without expressly so stating, "found additional reasons to support joinder in addition to the Defendant's goal of acquiring more money to fuel his heroin addiction." The trial court order then conclusory stated that it had considered both prongs of the severance test,

discussed the facts of State v. Jamie Paul Click, No. E2015-01769-CCA-R3-CD, 2017 WL 1189750 (Tenn. Crim. App. Mar. 30, 2017), appeal denied (Tenn. Aug. 16, 2017), determined, without analysis, that the proof of each aggravated robbery charged against the Defendant was inextricably connected with the evidence of the other offenses, and again denied severance.

In my view, after full application of the above legal framework, the offenses charged cannot be classified as parts of a larger, continuing plan or conspiracy. The State and the majority inexplicably have given short shrift to Hallock, Adams, and Griffin. As recognized by the trial court, those cases collectively stand for the proposition that unrelated crimes cannot be joined if committed for the purpose of obtaining money to buy drugs. Yet, the majority insists that the Defendant's confession to robbing the convenience stores to fuel his drug habit was sufficient proof to satisfy the first prong of the test for joinder because the confession itself amounted to a working plan. In my view, consistent with Hallock, Adams, and Griffin, the Defendant's confession provided his reason or motivation to commit the robberies-to support his drug addiction- and nothing more. He explained that when he ran out of money for drugs, he would rob another convenience store to get more money to do more drugs. His behavior amounts to random, opportunist criminal acts and not the product of any preconceived plan as required for joinder. Denton, 149 S.W.3d at 15 (holding that a larger plan or conspiracy contemplates offenses committed in the furtherance of a plan that has a "readily distinguishable goal, not simply a string of similar offenses"); see also United States v. Chartier, 970 F.2d 1009, 1016 (2d Cir. 1992) (concluding that evidence of a plan simply to commit robberies when and as money is desired or needed cannot be enough by itself to establish "single common scheme or plan" under the sentencing guidelines and that "mere similarity of separate crimes committed within a short period of time does not create common scheme or plan").

Finally, the Defendant's confession evinces a characteristic or condition, that is drug addiction, which drove the Defendant to commit crimes. This is classic propensity evidence. I recognize that our analysis here is under the first prong of Rule 14; however, as will be more fully discussed below, admission of this evidence clearly demonstrates the criminal disposition of the Defendant-as a drug addict-to show that he acted in conformity therewith in committing the other crimes charged against him. See e.g., State v. Mazowski, 337 N.J. Super. 275, 282-83, 766 A.2d 1176, 1180-81 (App. Div. 2001) (rejecting drug addiction as evidence of motive, opportunity, plan under Rule 404(b) and explaining that drug addiction is a "disposition" and prohibited as propensity). The State cannot be permitted to introduce propensity evidence under the guise of the broad category of a larger continuing plan or conspiracy when it would otherwise be prohibited from doing so under Rule 404(b). Because the Defendant's confession rings hollow and there was no other proof of a larger, continuing plan for purposes of Rule 14, I would have concluded my analysis and granted the Defendant's motion to sever.

- 5 -

As the majority reached a different conclusion, I am compelled to note that neither the trial court nor the majority expressly engaged in balancing whether the probative value of the evidence of the other offenses was not outweighed by the prejudicial consequences of admission under Rule 404(b). Hoyt, 928 S.W.2d at 944-45 ("In order to comply with the requirements of the second prong, the trial court was required to conduct a hearing to determine if evidence of one offense is relevant to a material issue in the trial of the other offense and to determine whether the probative value of such evidence outweighs any prejudicial effect."). Where the offenses to be joined are the same or similar, engaging in the balancing test is particularly important because the risk of prejudice is inherently higher. Dotson, 254 S.W.3d at 389. In any event, in regard to the second prong, I am not necessarily convinced that the offenses to be joined were so similar as to allow an inference of identity from the presence of a common scheme or plan. Moore, 6 S.W.3d at 240. Nevertheless, even if an argument can be made that evidence of the counts in which the Defendant confessed was relevant to identify the Defendant as the perpetrator in counts 8 and 12, in which the Defendant did not confess, the probative value of the evidence of these other offenses was outweighed by the prejudicial effect that admission of the evidence would have on the Defendant. This is because evidence that the Defendant confessed to ten of the twelve aggravated robberies invited the jury to infer guilt from the propensity of the Defendant to commit aggravated robberies. Dotson, 254 S.W.3d at 387; Spicer, 12 S.W.3d at 445.

The unfair prejudice was compounded when, as pointed out by the Defendant, the prosecutor argued in closing that the jury should convict the Defendant in count 8, to which there was no confession, because "[t]here can be no doubt that the same individual committed this robbery that committed the other ones." In upholding the severance, the majority relies upon the very type of propensity evidence Rules 14(b)(1) and 404(b) are designed to prevent. Accordingly, I would have concluded that the trial court abused its discretion in finding that the probative value of admitting such evidence was not outweighed by the prejudicial effect.

Because the error here is neither structural or constitutional, the appropriate inquiry is to determine what harm, if any, the Defendant suffered as a result of the improper joinder of offenses and whether the gravity of the error warrants a new trial. Dotson, 254 S.W.3d at 388. In determining whether an error is harmless, we must evaluate the record to determine whether this error appears to have affirmatively affected the outcome of the trial. Tenn. R. App. P. 36(b); Moore, 6 S.W.3d at 242. Additionally, in determining harmlessness, the key question is whether the error likely had an injurious effect on the jury's decision-making process. Dotson, 254 S.W.3d at 389. The "line between harmless and prejudicial error is in direct proportion to the degree . . . by which proof exceeds the standard required to convict . . . ." Delk, 590 S.W.2d at 442; Spicer, 12 S.W.3d at 447-48.

"[E]rror is harmful when, because the evidence of guilt was not overwhelming, the failure to sever offenses invited the jury to infer guilt from the propensity of the accused to commit crime." Prentice, 113 S.W.3d at 332; see Spicer, 12 S.W.3d at 447.

In this case, while the evidence presented at trial is sufficient to convict on each count, the nature of evidence presented regarding each count "varies in quality and degree." Dotson, 254 S.W.3d at 389. The Defendant confessed to most, but not all, of the crimes. Dotson, 254 S.W.3d at 389. It is likely that the confessions bolstered the limited evidence of other crimes. In other words, because the offenses were so similar, this bolstered the State's theory on all charges. Id. Proof of other crimes "easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime." Rickman, 876 S.W.2d at 828. As in Dotson, 254 S.W.3d at 390, "[w]e cannot conclusively determine how evidence that should not have been admitted affected the jury's decision-making" and "cannot be sure as to what evidence might have tipped the scales in favor of the State." However, it is doubtful that the jury independently considered each charge on its own evidence.

In my view, the evidence of the Defendant's guilt was overwhelming as to Counts 1, 2, 3, 4, 5, 6, 7, 9, 10, and 11. The proof showed the Defendant confessed to the offenses charged in the aforementioned counts and that cell towers placed the Defendant in the vicinity of these crimes when these crimes occurred. Because the evidence of the Defendant's guilt in these counts was overwhelming, the trial court's improper joinder of offenses charged in these counts was harmless. However, while the evidence was likely sufficient to sustain the Defendant's convictions in Counts 8 and 12, it was far from overwhelming. The trial court's failure to sever these offenses allowed the jury to infer the Defendant's guilt from his confession to ten of the twelve charged aggravated robberies. See Prentice, 113 S.W.3d at 333 (providing several examples of cases in which failure to sever was both harmful as to some convictions and harmless as to others). In count 8, although there was evidence showing that the Defendant's cell phone connected to a cell tower near the store at the time of the charged offense and surveillance video of the robbery, the Defendant expressly denied robbing this store, and the victim was unable to identify the perpetrator. In count 12, while there was evidence showing that the Defendant's cell phone communicated with a cell tower near the store at the time of the charged offense and surveillance video of the robbery, there was no confession, no identification made by a witness, no prints sufficient for analysis, and no proof that the perpetrator took anything. Because of the limited evidence presented as to these counts, I would have vacated the Defendant's convictions in counts 8 and 12 and remanded the case for separate trials as to these counts. See, e.g., State v. Lucius Macineo Moss, No. 03C01-9501-CR-00002, 1996 WL 238692, at *4 (Tenn. Crim. App. May 2, 1996).

In closing, the record shows that this case was extensive and heavily litigated by both parties. Indeed, Rules 8 and 14, reflect a legislative policy decision to balance judicial efficiency in such cases with a defendant's right to a fair trial. However, this can be done only with proper application of the rules in this area of the law. See State v. Garrett, 331 S.W.3d at 407 (citing multiple reversals of conviction based on improper joinder and "urging both trial courts and parties to tread more carefully in this area of criminal procedure"). Accordingly, I dissent.

_____
CAMILLE R. MCMULLEN, JUDGE