# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 20, 2002

## STATE OF TENNESSEE v. ALLEN PRENTICE BLYE

**Appeal from the Circuit Court for Sullivan County**
**Nos. S41,733, S41,774      R. Jerry Beck, Judge**

---

**No. E2001-01375-CCA-R3-CD**
**November 1, 2002**

---

The defendant, Allen Prentice Blye, was charged under two separate indictments with a total of fourteen offenses. The indictments were consolidated for trial and the defendant was convicted of all five counts contained in indictment number S41,733 and four counts contained in indictment number S41,774. The defendant was found not guilty on the remaining five charges contained in indictment number S41,774. The trial court imposed the following sentences:

**Indictment S41,733**

| | | |
|---|---|---|
| Count 1 | Theft over $10,000.00 (S. Loflin) | 15 years at 45% |
| Count 2 | Felony evading arrest | 6 years at 60% (consecutive) |
| Count 3 | Reckless endangerment | 6 years at 60% (consecutive) |
| Count 4 | Driving on a revoked license | 6 months (concurrent) |
| Count 5 | Leaving the scene of an accident | 30 days (concurrent) |

**Indictment S41,774**

| | | |
|---|---|---|
| Count 2 | Theft over $500.00 (Gafford) | 6 years at 60% (consecutive) |
| Count 4 | Theft under $500.00 (S. Loflin) | 11 months, 29 days (concurrent) |
| Count 6 | Theft over $500.00 (Carroll) | 6 years at 60% (consecutive) |
| Count 9 | Theft over $1,000.00 (Mann) | 12 years at 60% (consecutive) |

The effective sentence under indictment S41,733 is 27 years and the effective sentence under indictment S41,774 is 24 years. The trial court ordered the sentences under each indictment to be served consecutively, for a total effective sentence of 51 years. In this appeal, the defendant presents the following issues: (1) whether the trial court erred by refusing to sever certain of the offenses; (2) whether the evidence was sufficient to support the conviction for theft over $1,000; and (3) whether the sentence was excessive. Because the defendant was entitled to separate trials on some of the counts contained in indictment S41,774, and the error cannot be classified as harmless, the four convictions under that indictment must be reversed and remanded. The convictions and accompanying sentences under indictment S41,733 are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed in Part and Reversed and Remanded in Part**

GARY R. WADE, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Mark H. Toohey, Kingsport, Tennessee (at trial), and Julie A. Rice, Knoxville, Tennessee (on appeal), for the appellant, Allen Prentice Blye.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the morning of July 31, 1998, Alfred Mann of the Colonial Heights area in Sullivan County discovered that his silver1987 Volkswagen Scirocco sports car, valued at between $5,000 and $6,000, had been taken from his front lawn. He had left his keys in the vehicle.

On August 8, 1998, Samuel Loflin, whose company, Freeman Glass, owned a 1997 GMC Yukon and a 1994 Ford F-250 pickup truck, discovered that the Yukon had been taken from his driveway in the Preston Forest Subdivision in Kingsport. The Yukon had a value of over $10,000. Two drills and a suction cup for holding glass, having a cumulative value of over $500, were missing from the Ford truck.

That same morning, Samuel Loflin's son, Tom, who lived next door to his father, discovered that someone had broken into his Pontiac Grand Prix. The passenger door had been left open and the contents of the glove compartment and the center console had been removed and left on the seats. Debra Lynn Clasin, who lived directly across the street, found that the trunk of her daughter's Mazda automobile had been left open. The console and glove compartment of the vehicle were also open and the contents were scattered throughout the interior of the car.

Also that same morning, Brian Carroll, who lived in the same subdivision as the Loflins, discovered that the door to his Chevrolet S10 pickup truck, which was parked in his carport, had been opened and the contents of the truck were in disarray. An amplifier, a subwoofer box, and compact discs were missing. The property had a cumulative value of approximately $1,500.

The next day, Joe Aaron Gafford, a Church of Christ minister, returned from vacation and discovered that his residence, which was located adjacent to Preston Forest subdivision, had been burglarized and ransacked. A light was left on in the residence, which had been locked during Gafford's absence. The carport door had been pried open and left ajar. Drawers and cabinets were open throughout the house. A baby ring, two VCRs, two cameras, a portable television, a microwave, $200 in cash, and several drawers from a jewelry armoire had been taken. Gafford estimated that the cumulative value of the stolen property was in excess of $1,000. All of the property taken was later recovered.

Mary Elizabeth Snapp, who had been dating the defendant, met him at an office complex where he was doing interior cleaning on August 8, 1998. Sometime after dark, each left in separate cars. According to Ms. Snapp, she followed the defendant, who was driving a two-door silver sports car, to a Winn-Dixie parking lot, where he opened the trunk of his car and gave Ms. Snapp a VCR and a baby ring. She took the items to her apartment. At approximately 3:00 A.M. the next morning, the defendant drove to Ms. Snapp's apartment in the silver sports car. The defendant then drove Ms. Snapp to a friend's house where she waited 30 minutes to an hour. When the defendant returned, he was driving a green GMC Yukon, which was later identified as that stolen from Sam Loflin. Ms. Snapp joined the defendant in the Yukon. Shortly after their departure, the defendant picked up a man whose car was out of gasoline and drove him to a convenience market. When a police officer arrived, the defendant drove away, leaving the man at the pump. Afterward, another police vehicle followed the Yukon until the defendant drove down a dead-end road, where he and Ms. Snapp waited for several minutes. A short while later, another officer saw the Yukon and began to follow. According to Ms. Snapp, the defendant sped away, drove through a roadblock, and eventually missed a curve and crashed into a house. The defendant fled on foot, leaving Ms. Snapp in the car. When questioned by police, Ms. Snapp initially denied any knowledge of the defendant. When told she might not see her children anymore, however, she cooperated by making a statement and showing officers the location of the VCR and baby ring. A search of Ms. Snapp's apartment yielded the VCR and baby ring belonging to Gafford.

Sergeant Dan Brookshire of the Kingsport Police Department was looking for the stolen Yukon when he saw a vehicle fitting that description at the gas pumps at a convenience market. After calling for assistance from other officers, Sergeant Brookshire observed the defendant hurriedly drive away, leaving a passenger standing at the gas pump. Sergeant Brookshire followed closely behind but lost sight of the vehicle.

Shortly after receiving the call from Sergeant Brookshire, Officer Timothy Horne saw the Yukon being driven by the defendant and followed. Before Officer Horne could initiate a traffic stop, however, the defendant accelerated, jumped the curb in a church parking lot, and sped away. The defendant did not stop when Officer Horne activated his lights, but continued to accelerate and eventually ran a stop sign. At another intersection, the defendant drove through a flashing red light and sped up to 70 miles per hour while straddling the double yellow centerline and driving into oncoming traffic.

Officer Kevin Hite, who had also learned of the high speed chase, was forced to evade the defendant as they approached each other in opposite directions. The Yukon driven by the defendant went "slightly airborne" and struck the spotlight on the side of Officer Hite's cruiser. Officer Horne continued his pursuit and saw the defendant drive through a stop sign and a red light before crashing the Yukon into the side of a residence. The defendant fled on foot but was arrested by police, who returned him to the scene of the accident.

Detective Frank Light found compact discs belonging to Carroll in the Yukon. The Volkswagen Scirocco which had been taken from Mann was discovered in an apartment complex

near Gafford's residence. Three of the four drawers taken from Gafford's jewelry armoire were inside the Scirocco, as were his VCR and microwave. The two drills belonging to Sam Loflin, all of Carroll's stereo equipment and some of his compact discs were also in the Scirocco. At trial, the defendant stipulated that his driver's license had been suspended or revoked at the time of the arrest.

# I

The defendant first contends that the trial court abused its discretion by failing to sever the offenses. The state insists that the trial court properly concluded that the multiple offenses were part of the same criminal transaction because most of the offenses were committed in the same neighborhood on the same night. The trial court concluded that severance was not proper because the offenses were part of a common scheme or plan. The trial court additionally determined that the evidence of each offense was admissible in a trial of the others under Rule 404(b) as evidence of the defendant's identity as the perpetrator. The trial court did not engage in a balancing test to determine whether the probative value outweighed the danger of unfair prejudice.

"[D]ecisions to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) are to be reviewed for an abuse of discretion." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). Additionally, "a trial court's refusal to sever offenses will be reversed only when the 'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)). "[W]hen a defendant objects to a pre-trial consolidation motion by the state, the trial court must consider the motion by the severance provisions of Rule 14(b)(1), not the 'same or similar character' standard of Rule 8(b)." Spicer v. State, 12 S.W.3d 438, 443 (Tenn. 2000).

Rule 14 (b)(1) provides as follows:

> If two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b), the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others.

Tenn. R. Crim. P. 14(b)(1). The "primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of indictment had been severed." State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984). Tennessee Rule of Evidence 404(b) prohibits the admission of "other crimes, wrongs, or acts" of the defendant when admitted only to show the defendant's propensity to commit the crime charged. See Tenn. R. Evid. 404(b). Rule 404(b) does not, however, bar the admission of acts alleged to be part of a common scheme or plan when relevant to a material issue at trial. See Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980). Before a trial court may deny a severance request, it must hold a hearing on the motion and conclude from the evidence and argument presented at the hearing that (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of each offense is relevant to some material issue in the trial of all the other offenses; and (3) the

probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant. Spicer, 12 S.W.3d at 445; see also Tenn. R. Evid. 404(b)(3).

"[A] common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." State v. Moore, 6 S.W.3d 235, 239 n.7 (Tenn. 1999). In order to meet the first prong of common scheme or plan, the evidence must fall under one of the following categories: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. This court determined in State v. Hallock that:

> [T]he mere existence of a common scheme or plan is not a proper justification for admitting evidence of other crimes. Rather, admission of evidence of other crimes which tends to show a common scheme or plan is proper to show identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue.

875 S.W.2d 285, 292 (Tenn. Crim. App. 1994).

It is our view that the defendant would not be entitled to a severance of the offenses charged in indictment S41,733 because those offenses represent parts of the same criminal transaction. The defendant, who had a revoked or suspended license, drove Loflin's stolen Yukon, fled from officers, and placed another in danger as he did so. The defendant then left the scene after crashing the Yukon into the side of a residence. Each offense, including the original theft of the Yukon, is so closely related to the others that, under the guidelines set out in the latter portions of this opinion, a joint trial was warranted. Morever, even if the Yukon theft, which occurred several hours before the remaining offenses described in the first indictment, was too far removed in time to be claimed as in "the same criminal transaction," the defendant was caught "red-handed" by police and the error would have been harmless, having no effect on the result. See Tenn. R. App. P. 52(a).

With regard to the offenses charged in indictment S41,774, a material issue existed as to the identity of the defendant as the perpetrator of the crimes. From our review of the record, it does appear that the offenses charged in each of the two indictments are related in some way, tending to establish the defendant as the perpetrator. The defendant was arrested after crashing the Yukon stolen from Sam Loflin and Ms. Snapp was in the car at that time. Compact discs taken from Carroll's truck were also in the Yukon. Items stolen from the Gafford residence were discovered in the Scirocco, which Ms. Snapp reported to authorities as having been in the defendant's possession. All of the offenses occurred within a short distance of each other, three in the same subdivision and one on an adjacent street. In those cases where identity is the basis for 404(b) admissibility, it is generally not proof of the other crime itself which provides evidence of identity but evidence found at the other crime scene that tends to connect the defendant to other crimes in the scheme. See e.g., State v. Hall, 976 S.W.2d 121, 146 (Tenn. 1998) (appendix) (discussing that evidence found at some of the crime scenes linked the defendants to other crimes in the spree); State v. Joe N. Anderson, Jr.,

(Tenn. Crim. App., at Knoxville, Dec. 9, 1999), app. denied (Tenn., Sept. 11, 2000) (noting that the evidence of the other crime was relevant to identity because proof that the defendant fired the gun at the victim in the first crime tended to establish that he was the shooter in the second crime). In our view, the offenses charged do not fit neatly into one of the three common scheme or plan categories: (1) signature crimes, (2) a larger, continuing plan or conspiracy, or (3) the same criminal transaction.

For the offenses to qualify under the signature crimes category, the "modus operandi employed must be so unique and distinctive as to be like a signature." Moore, 6 S.W.3d at 240 (quoting State v. Carter, 714 S.W.2d 241, 245 (Tenn. Crim. App. 1986)). Although the offenses do not have to be identical in every way, a common scheme or plan is not found merely because there was evidence that the defendant committed the multiple offenses or because the similarities of the offenses outweigh the differences. Moore, 6 S.W.3d at 240-41. "Rather, the trial court must find that a distinct design or unique method was used in committing the offenses." Id. at 241. The method of perpetrating the crimes must employ "'such unusual particularities'" that a reasonable person could believe it unlikely that different people were using this method. Id. at 240 (quoting Harris v. State, 189 Tenn. 635, 644, 227 S.W.2d 8, 11 (1950)). In this case, as the state concedes, nothing about the offenses charged in either indictment would establish a "distinct design or unique method" so that the offenses could be joined as signature crimes.

"The larger, continuing plan category encompasses groups or sequences of crimes committed in order to achieve a common ultimate goal or purpose." Hallock, 875 S.W.2d at 290; Neil P. Cohen, et al., *Tennessee Law of Evidence* § 404[12][c], pp. 4-93 (4th ed. 2000) ("The unifying concept of crimes admitted under this theory is not their high degree of similarity but the common goal or purpose toward which each crime is directed."). The category requires proof of "a working plan, operating towards the future with such force as to make probable the crime for which the defendant is on trial." State v. Hoyt, 928 S.W.2d 935, 943 (Tenn Crim. App. 1995); see also State v. Adams, 859 S.W.2d 359, 362 (Tenn. Crim. App 1992). In Hallock, this court rejected the contention that sex crimes against different victims in the same household can be consolidated based upon a common goal of achieving sexual gratification. 875 S.W.2d at 290. Hallock provides an example to illustrate a common problem when attempting to classify multiple crimes as a larger, continuing plan: "X is on trial for three counts of burglary, each involving a different building, a different form of entry, and a different day. His overall purpose, however, was to acquire money for college. Clearly, without more, X is entitled to severance under Rule 14(b)(1)." Id.; see also Adams, 859 S.W.2d at 362 (holding that a shared motivation for two otherwise unrelated crimes is insufficient to prove a common scheme or plan even when the offenses share some similarities). The fact that a defendant has a common goal in committing crimes or that most of the crimes were committed in the same neighborhood does not mean that proof of the individual, disparate crimes will reveal a larger, continuing plan. In a recent case, this court concluded that a common motive to terrorize the victim, the defendant's estranged wife, was insufficient to show a common scheme or plan when the assaults were otherwise unrelated in time, location, and character. State v. Ronald Prentice, No. M2000-02937-CCA-R3 (Tenn. Crim. App., at Nashville, Dec. 28, 2001), for publication.

Since the rulings in <u>Hallock</u> and <u>Adams</u>, the larger, continuing plan category has typically been restricted to cases involving crime sprees, where the defendant commits several crimes quite closely in time to one another. <u>See</u> <u>e.g.</u>, <u>State v. Hall</u>, 976 S.W.2d 121, 146 (Tenn. 1998) (appendix) (holding the burglaries, larcenies, and murders committed by the defendants during the week following their escape from a Kentucky prison were part of a larger plan to flee the country and the Kentucky authorities). The offenses charged in indictment S41,774 cannot, in our opinion, be classified as parts of a larger, continuing plan because the state has failed to show the existence of "a working plan, operating towards the future with such force as to make [the other offenses probable]." <u>See Hoyt</u>, 928 S.W.2d at 943; <u>Adams</u>, 859 S.W.2d at 362.

The same criminal transaction category can be described as the allowance of other criminal acts evidence to provide the "full story" of the offense for which the defendant is on trial. Cohen, et al., <u>Tennessee Law of Evidence</u>, § 404(13), at pp. 4-94, 95. For example, a bank robber steals a car while fleeing from the bank; the car theft is admissible in the trial of the robbery to describe the whole event. <u>Id.</u> According to that particular authority, however, "crimes admitted as part of the 'same transaction' should be limited to those so inextricably connected in time, place, or manner that the jury would be unable to comprehend the essential nature of the charged crime without hearing the evidence of the 'other' crime." <u>Id.</u> (citing <u>Claiborne v. State</u>, 555 S.W.2d 414 (Tenn. Crim. App. 1977)). It is only when "exclusion of the evidence would create a chronological conceptual void" that would likely result in confusion on the material issues and "sacrifice the jury's understanding" that same criminal transaction evidence is admissible. <u>State v. Gilleland</u>, 22 S.W.3d 26, 272 (Tenn. 2000). In this case, none of the offenses for which convictions resulted in indictment S41,774 could be described as so essential to the others or to those offenses charged in indictment S41,733 that, without them, the jury would be unable to comprehend the essential nature of the charged crime. Moreover, exclusion of the evidence of some of the offenses in a trial of the others would not create a confusing conceptual void. Thus, although it might be cumbersome, the charges in indictment S41,774 should be tried separately from the charges in S41,733 and from each other.

Our next inquiry is what, if any, prejudice the defendant suffered as a result of the improper joinder. Tennessee Rule of Criminal Procedure 52 states that "[n]o judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). "In most severance cases, 'the line between harmless and prejudicial error is in direct proportion to the degree . . . by which proof exceeds the standard required to convict. . . .'" <u>Spicer</u>, 12 S.W.3d at 447-48 (quoting <u>Delk v. State</u>, 590 S.W.2d 435, 442 (Tenn. 1979)). Our supreme court has held that the error is harmful when, because the evidence of guilt was not overwhelming, the failure to sever offenses invited the jury to infer guilt from the propensity of the accused to commit crime. <u>Shirley</u>, 6 S.W.3d at 250-51. In <u>Spicer</u>, our high court concluded that, because the evidence of guilt was sufficient but not overwhelming, the failure to sever offenses required reversal. 12 S.W.3d at 447. This court, in <u>State v. Michelle Ferguson</u>, No. E1999-01302-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Aug. 3, 2000), held that the trial court's failure to sever was reversible error because "[a]lthough the evidence . . . was legally sufficient to support all three of [d]efendant's convictions, the evidence was far from overwhelming." <u>Cf. State v. Michael Anderson Peek</u>, No. E1998-00038-CCA-R3-CD (Tenn. Crim.

App. May 3, 2000) (finding that the failure to sever was harmless where the evidence of the defendant's guilt was overwhelming).

The jury acquitted the defendant on five of the nine counts submitted under indictment S41,774. On three of the other four counts, the jury returned verdicts of guilt on lesser included offenses rather than the offenses charged. During her testimony, Ms. Snapp acknowledged questions about her own credibility. Her testimony about the defendant's possession of the Scirocco was critical for the state as it was the only evidence connecting the defendant to the theft of the Scirocco and the evidence of the other crimes discovered in the Scirocco. In summary, the evidence was not overwhelming on any of the counts in indictment S41,774. The error of trying each of the charges which resulted in convictions (the Gafford theft, the S. Loflin theft, the Carroll theft, and the Mann theft) in the same trial cannot be classified as harmless.

Although it was inappropriate for the counts in indictment S41,774 to be tried with those in indictment S41,733, the evidence was overwhelming for the Loflin vehicle theft, the evading arrest, the reckless endangerment, and the driving on a suspended or revoked license convictions under indictment S41,733. In consequence, the error was harmless as to the convictions under indictment S41,733.

## II

The defendant next asserts that the evidence is insufficient to support his conviction for theft of the Scirocco. On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). In a criminal action, a conviction will be set aside only where the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In a jury trial, a guilty verdict, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in testimony in favor of the theory of the state. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective

consent." Tenn. Code Ann. § 39-14-103. The defendant submits that the only testimony connecting him to the theft of the Scirocco was Ms. Snapp's assertion that he had been in a white, black, or silver sports car sometime near August 8 or 9. The defendant further argues that Ms. Snapp admitted that her reputation for truthfulness was poor and that she feared losing custody of her children when first questioned by the police.

During his testimony, Mann identified a photograph officers had taken of his vehicle. He inspected the vehicle after it was located by police on August 10, 1998, and recognized it as the one stolen some eleven days earlier. Ms. Snapp testified that the car appearing in the photograph of Mann's vehicle was the same one she saw in the possession of the defendant shortly before his arrest.

It is, of course, the function of the jury to assess the credibility of the witnesses. In this instance, the jury accredited the testimony of Ms. Snapp. Because Ms. Snapp was with the defendant at the time he fled from police and crashed his vehicle, her testimony that he had driven the Scirocco before picking her up in the Yukon was particularly probative. The evidence of the defendant's guilt satisfies the standard prescribed in Tenn. R. App. P. 13(e) and <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). Due to the trial court's failure to grant a severance, however, the defendant is entitled to a new trial on this charge.

### III

Finally, the defendant argues that the trial court erred in the imposition of sentence. The defendant generally complains about the consolidated sentencing hearing in which the defendant was sentenced for these crimes as well as unrelated aggravated rape and aggravated burglary convictions. Most of the trial judge's findings of fact deal with the unrelated crimes. As to the "cases unrelated to the aggravated rape and aggravated burglary," the trial court applied the following enhancement factors:

(1)   The defendant has a prior history of criminal convictions;
(2)   The defendant treated the victim with exceptional cruelty;
(3)   The offense was committed to gratify the defendant's desire for pleasure or excitement;
(4)   The defendant has exhibited an unwillingness to comply with the conditions of release into the community; and
(5)   The felony offenses were committed while the defendant was on parole.

Tenn. Code Ann. § 40-35-114(1), (5), (7), (8), (13)(b).

The state concedes that neither enhancement factor (5), that the victim was treated with exceptionally cruelty, nor (7), that the crime was committed to satisfy the defendant's desire for pleasure or excitement, would be applicable to the offenses at issue and submits that appellate review must be <u>de novo</u> without a presumption of correctness.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

In misdemeanor sentencing, the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. The sentence must be specific and consistent with the purposes of the Act. Tenn. Code Ann. § 40-35-302(a), (b). Not greater than 75 percent of the sentence should be fixed for service by a misdemeanor offender; however, a DUI offender may be required to serve the full one hundred percent of his sentence. Tenn. Code Ann. § 40-35-302(d); Palmer v. State, 902 S.W.2d 391, 393-94 (Tenn. 1995). In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn. Code Ann. § 40-35-302(d). The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Appellate review of misdemeanor sentencing is de novo with a presumption of correctness. See State v. Troutman, 979 S.W.2d 271 (Tenn. 1998).

Notably, the findings of fact and conclusions of law filed by the trial court dealt primarily with sentences for aggravated rape and aggravated burglary, both of which occurred on June 20, 1998 and were wholly unrelated to the convictions at issue here. The convictions under indictment

S41,733 were not individually addressed. Further, certain of the enhancement factors relied upon by the trial court, as the state concedes, are inapplicable. Under those circumstances, our review must be de novo without a presumption of correctness. Because a new trial has been ordered on each of the convictions under indictment S41,774, this court need only address the five convictions under indictment S41,733: 15 years for theft over $10,000 (Class C felony); six years for felony evading arrest (Class E felony); six years for reckless endangerment (Class E felony); six months for driving on a revoked or suspended license (Class B misdemeanor); and 30 days for leaving the scene of an accident (Class C misdemeanor). Each of the first three sentences are to be served consecutively. The misdemeanor sentences are to be served concurrently with the felony sentences.

Initially, the defendant does not take issue with either of the two misdemeanor sentences. Because the terms imposed are to be served concurrently with each other and with the felonies, they have no bearing on the effective sentence. For the theft conviction, a Class C felony, the defendant was classified as a range III, persistent offender. Thus, the appropriate range would be 10 to 15 years, with eligibility for release after serving 45%. As to the evading arrest and reckless endangerment convictions, both Class E felonies, the defendant was classified as a career offender, making the appropriate range 4 to 6 years, with eligibility for release after service of 60%. The defendant does not challenge his status as either a persistent or a career offender, see Tenn. Code Ann. § 40-35-107, -108, but complains about the trial court's application of the enhancement and mitigating factors. He also contends the trial court should not have classified him as a professional criminal for consecutive sentencing purposes. See Tenn. Code Ann. § 40-35-115(b)(1).

Our review of the record indicates that at least three enhancement factors are applicable: (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (8) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and, as to the three felonies, (13) the felony was committed while he was on parole. See Tenn. Code Ann. § 40-35-114 (1), (8), (13)(b).

The presentence report reflects that the defendant had a prior criminal record, including some thirty-five adult convictions and eight juvenile convictions, dating back to 1966. He received prison sentences for each adult conviction, which included convictions for a variety of theft related offenses, burglary, and escape from both prison and jail. The state reported convictions in 2001 for aggravated burglary and aggravated rape. After his arrest, the defendant was returned to the Department of Correction for a violation of his parole. While awaiting trial on the instant offenses, the defendant received two disciplinary reprimands.

The defendant, 46 at the time of sentencing, dropped out of high school in the tenth grade and has not been employed since 1988. While the defendant argues that his conduct neither caused nor threatened serious bodily injury, it is our view that even if every mitigating factor argued by the defendant is applicable to each of his crimes, his criminal record is so extensive as to warrant enhancement of the sentences to the maximum terms.

Our next inquiry is whether the trial court erred by ordering the sentences to be served consecutively. The state contends that consecutive sentencing was appropriate because the defendant had an extensive record of criminal activity and qualified as a professional criminal. The state has submitted argument and provided citations of legal authority in support of its claim that the defendant has an extensive criminal record. It does not provide any supporting argument to its claim that the defendant qualifies as a professional criminal. See generally State v. Desirey, 909 S.W.2d 20 (Tenn. Crim. App. 1995).

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted this cautionary language. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of

---

[1]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

Because the defendant is an offender whose record of criminal activity is so extensive, he qualifies for the consecutive sentencing imposed for felony evading arrest and reckless endangerment offenses, regardless of whether the state met its burden of showing he is a "professional criminal." See Tenn. Code Ann. § 40-35-115(b)(2). Moreover, the defendant's sparse employment history coupled with the sheer number of his prior convictions supports a determination that he is indeed a professional criminal. Id. § 40-35-115(b)(1); see Desirey, 909 S.W.2d 20. In our view, the aggregate term of 27 years imposed for convictions under indictment S41,733 is warranted.

## CONCLUSION

The judgments under indictment S41,733 are affirmed, as are the sentences. Because the trial court should have severed each of the offenses under indictment S41,774, and the error cannot be classified as harmless, those judgments of conviction must be reversed and the defendant must be granted a new trial.

_____
GARY R. WADE, PRESIDING JUDGE